1  SEYFARTH SHAW LLP
   John Giovannone (SBN 239366)
2  E-mail: jgiovannone@seyfarth.com
   Amanda I. Fry (SBN 317093)
3  E-mail: afry@seyfarth.com
   601 S. Figueroa Street, Suite 3300
4  Los Angeles, California 90017
   Telephone:   (213) 270-9600
5  Facsimile:   (213) 270-9601

6  SEYFARTH SHAW LLP
   Ryan McCoy (SBN 276026)
7  E-mail: rmccoy@seyfarth.com
   560 Mission Street, 31st Floor
8  San Francisco, California 94105-2930
   Telephone:   (415) 397-2823
9  Facsimile:   (415) 397-8549

10 Attorneys for Defendants
   RICOH USA, INC.; IKON OFFICE SOLUTIONS, INC.;
11 and RICOH AMERICAS CORPORATION

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUSTO DE LEON, as an individual, on behalf of himself, and all persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RICOH USA, INC., an Ohio corporation authorized to do business in the state of California; IKON OFFICE SOLUTIONS, INC., also known as Ricoh USA, Inc., an Ohio corporation authorized to do business in the state of California; RICOH AMERICAS CORPORATION, a Delaware corporation previously authorized to do business in the state of California and succeeded by Ricoh USA, Inc.; and DOES 1 to 10 inclusive,<br><br>Defendants. | Case No.<br><br>**DECLARATION OF TRICIA GRAHAM IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL**<br><br>Complaint Filed: May 22, 2018<br><br>Sonoma County Superior Court Case No.: SCV 262516 |

DECLARATION OF TRICIA GRAHAM

46982510v.3

I, Tricia Graham, declare and state as follows:

1. I am over the age of 18 years old. Unless otherwise stated, I have personal knowledge of the following facts and, if called and sworn as a witness, could and would testify thereto.

2. I am employed by Ricoh USA, Inc. ("Ricoh") as Director, Payroll & Commissions. I have held this position for approximately 18 years. In this capacity, I am familiar with Ricoh's entity status, corporate history, and operational locations. My job duties also include providing support for in-house and outside legal counsel including gathering corporate and employee information and documentation (such as payroll data), assisting with compliance and projects and interfacing with various corporate departments to obtain information needed in the investigation of claims.

3. In my capacity as Director, I have access to certain payroll and personnel records of Ricoh employees, including Augusto De Leon, which have been maintained by Ricoh in the ordinary course of business. Mr. De Leon's personnel file includes information he submitted to Ricoh throughout the course of his employment. Mr. De Leon has, without exception, listed a California address as his address.

4. Because of my position and experience described above, I am familiar with and have access to the electronic payroll systems and electronic databases regarding Ricoh USA, Inc.'s ("Ricoh") employees. Those systems, using various search and filter functions, are able to determine the number of employees holding particular positions for a specific time period, the number of terminations during a specific time period, the hourly rate of pay for employees for a specific time period, the number of workweeks for a specific time period, and the number of pay periods for a specific time period. I had such filters and searches performed for Ricoh's field service representatives, technology service technicians, and/or other similar non-exempt positions (generally referred to as "non-exempt service technicians") who worked for Ricoh in California from May 22, 2014 to June 10, 2018. I also had a filter and search performed on this group to determine how many of Ricoh's non-exempt service technicians had been terminated between May 22, 2015 and June 10, 2018.

5. Based on these filters and searches, and my review of their results, I am aware of the number of non-exempt service technicians who Ricoh employed in California for the time period May 22, 2014 to June 10, 2018: **564 employees**.

6. Based on these filters and searches, and my review of their results, I am aware of the average hourly rate of pay for non-exempt service technicians who Ricoh employed in California for the time period May 22, 2014 to June 10, 2018: **$25.86/hour**.

7. Based on these filters and searches, and my review of their results, I am aware of the number of workweeks worked by non-exempt service technicians who Ricoh employed in California for the time period May 22, 2014 to June 10, 2018: **89,308 workweeks**.

8. Based on these filters and searches, and my review of their results, I am aware of the number of non-exempt service technicians who Ricoh employed in California and whose employment terminated between May 22, 2015 to June 10, 2018: **174 terminated employees.**

9. Based on these filters and searches, and my review of their results, I am aware of the average hourly rate of pay for non-exempt service technicians who Ricoh employed in California and whose employment terminated between May 22, 2015 to June 10, 2018: **$26.10/hour.**

10. Based on these filters and searches, and my review of their results, I am aware the number of non-exempt service technicians who Ricoh employed in California for the time period May 22, 2017 to June 10, 2018: **380 employees.**

11. Based on these filters and searches, and my review of their results, I am aware the number of workweeks worked by non-exempt service technicians who Ricoh employed in California for the time period May 22, 2017 to June 10, 2018: **19,448 workweeks.**

12. Because of my position and experience described above, I am aware that Ricoh pays its employees on a bi-weekly basis.

13. Because of my position and experience described above, I am also aware of the corporate structure of Ricoh. Ricoh is now, and since Plaintiff filed this action has been, an Ohio corporation incorporated under the laws of the state of Ohio.

14. Ricoh's corporate headquarters, including the offices of Ricoh's key leaders and upper management, is in Malvern, Pennsylvania.

15. Because of my position and experience described above, I am also aware that named defendant IKON Office Solutions, Inc. ("IKON") is no longer in existence as it became Ricoh in April 2012 (see footnote 1 of Plaintiff's complaint at page 5: "Effective April 1, 2012, IKON Office

1  Solutions, Inc. changed its name to Ricoh USA, Inc."). Prior to April 2012, IKON was an Ohio corporation incorporated under the laws of the state of Ohio, with its principal place of business in Malvern, Pennsylvania. IKON's corporate headquarters were located in Malvern, Pennsylvania, where IKON's key leaders and upper management directed, controlled, and coordinated IKON's activities.

16. Because of my position and experience described above, I am also aware that named defendant Ricoh Americas Corporation ("RAC") is no longer in existence as it merged into Ricoh effective April 1, 2016 (see https://industryanalysts.com/ricoh-consolidates-brands/; see also footnote 2 of Plaintiff's complaint at page 5: "Effective April 1, 2016, Ricoh Americas Corporation merged out of existence into Ricoh USA, Inc."). Prior to October 2012, RAC was a Delaware corporation incorporated under the laws of the state of Delaware, with its principal place of business and corporate headquarters in West Caldwell, New Jersey, where RAC's key leaders and upper management directed, controlled, and coordinated RAC's activities. As of 2014, RAC was still a Delaware corporation, but its principal place of business and corporate headquarters were located in Malvern, Pennsylvania, where RAC's key leaders and upper management directed, controlled, and coordinated RAC's activities.

I declare under the penalty of perjury under the laws of the State of California, the State of Georgia, and the United States of America that the foregoing is true and correct.

Executed this 20th day of June, 2018, in Macon, Georgia.

_____
Tricia Graham