UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AUGUSTO DE LEON,

             Plaintiff,

      v.

RICOH USA, INC., et al.,

             Defendants.

Case No. 18-cv-03725-JSC

**ORDER RE: PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Re: Dkt. No. 37

Augusto De Leon brings a class action against Ricoh USA, Inc. ("Ricoh USA"), Ricoh Americas Corporation ("Ricoh Americas"), and IKON Office Solutions, Inc. ("IKON") (collectively, "Ricoh" or "Defendants"), alleging wage and hour violations under California state law, and violations of the Fair Labor and Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, among other claims. (Dkt. No. 29.)[1] Now before the Court is Plaintiff's unopposed motion for preliminary approval of the parties' class and collective action settlement agreement.[2] (Dkt. No. 37.) Having considered the motion and having had the benefit of oral argument on November 7, 2019, and upon review of the amended settlement agreement and modified class notice, the Court GRANTS the motion for preliminary approval.

## BACKGROUND

Plaintiff filed a class and representative action against Ricoh in the Superior Court of the State of California, County of Sonoma in May 2018, alleging multiple wage and hour violations under the California Labor Code, violation of California's Unfair Competition Law ("UCL") under the Business and Professions Code, and seeking relief under the Private Attorneys General

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.
[2] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (*See* Dkt. Nos. 7 & 8.)

Act of 2004 ("PAGA").[3]  (Dkt. No. 1, Ex. A at 14-15.)  Ricoh removed the action to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  (Dkt. No. 1 at 3.) Plaintiff filed a first amended complaint ("FAC") in October 2018, bringing the same claims but revising the proposed class pursuant to the parties' stipulation.  (*See* Dkt. Nos. 14 – 14-2.)

After an initial round of discovery, the parties agreed in January 2019 to mediate the case "with well-respected mediator Lisa Klerman, Esq. in Los Angeles, California."  (Dkt. No. 37-2 at ¶ 9.)  The parties "exchange[d] additional information and documents in advance of mediation." (*Id.*)  In March 2019, the parties "attended a full day of private mediation" with Ms. Klerman and reached a settlement in principle "after extensive negotiations."  (*Id.* at ¶ 11.)  The parties' agreement is reflected in the "Joint Stipulation and Agreement for Class Action Settlement and Release of Claims" ("Settlement Agreement" or "Agreement").[4]  (*Id.* at ¶ 12.)

The parties then filed a stipulation in this Court requesting leave for Plaintiff to file a second amended complaint to supplement the claims in the FAC with those brought in the related state court case of *Hector Lopez v. Ricoh USA, Inc*, (Dkt. No. 37-2 at ¶ 10; *see also* Dkt. Nos. 27), which the Court granted, (Dkt. No. 28).  Plaintiff filed the second amended complaint on July 12, 2019, asserting the following claims: (1) Failure to Pay Minimum Wages, Straight Time, and Overtime Compensation, Cal. Lab. Code §§ 204, 210, 222, 223, 224, 510, 1194, 1197, 1197.1, 1198; (2) Failure to Provide Meal Periods, Cal. Lab. Code §§ 226.7, 512; (3) Failure to Provide Rest Periods, Cal. Lab. Code §§ 226.7; (4) Failure to Reimburse for Necessary Work Expenses, Cal. Lab. Code §§ 2800, 2802; (5) Failure to Pay Wages Owed, Cal. Lab. Code §§ 201-203; (6) Failure to Furnish Accurate Itemized Wage Statements, Cal. Lab. Code § 226, 226.3; (7) Failure to Maintain Accurate Records, Cal. Lab. Code § 226(a), 1174; (8) Unfair Business Practices, Bus.

---

[3] Prior to filing the original complaint, Plaintiff submitted written notice of Ricoh's alleged wage-and-hour violations to the California Labor and Workforce Development Agency ("LWDA"), in accordance with PAGA.  (Dkt. No. 37-2 at ¶ 4.)

[4] The Settlement Agreement resolves the claims in this action "and those in the related case of *Hector Lopez v. Ricoh USA, Inc.*, Los Angeles County Superior Court, case number 18STCV08926."  (Dkt. No. 37-2 at ¶¶ 12, 82 (noting that the parties to the *Lopez* action have agreed that Mr. Lopez "will file a request for dismissal" with prejudice within 14 days of either the Court's order granting final approval or the date after which any proper appeal of that order is resolved).)

& Prof. Code §§ 17200 *et seq.* ("UCL claim"); (9) PAGA, Cal. Lab. Code §§ 2698 *et seq.*; (10) violations of the FLSA, 29 U.S.C. §§ 201 *et seq.* (Dkt. No. 29 at 1-2.) The second amended complaint is the operative complaint for settlement purposes. (Dkt. No. 37-2 at ¶ 10.)

Plaintiff filed the instant unopposed motion for preliminary approval of the Settlement Agreement on October 3, 2019. (Dkt. No. 37.) Thereafter Ricoh sent notices to the United States Attorney General and the California Attorney General, pursuant to CAFA, 28 U.S.C. § 1715(b). (Dkt. No. 39 at ¶ 2; *see also* Dkt. Nos. 39-1 & 39-2, Exs. A-B.) The Court heard oral argument on November 7, 2019 and noted its concerns regarding: the amount of funds designated for potential *cy pres* distribution; the opt-out language in the proposed class notice ("Notice"); and the ability of putative class members to object to Plaintiff's forthcoming motion for attorneys' fees. The Court ordered the parties to submit supplemental briefing addressing the Court's concerns, (*see* Dkt. No. 41), and Plaintiff did so on November 21, 2019, (*see* Dkt. Nos. 42 – 42-2).

## I.    The Parties

Ricoh USA is corporation incorporated under Ohio law, with its headquarters and principal place of business in Malvern, Pennsylvania. (Dkt. No. 1 at ¶ 9.) Ricoh USA is authorized to do business in California. (Dkt. No. 29 at ¶ 9.) It produces, distributes, and services office equipment, including printers, photocopiers, and fax machines throughout the state. (*Id.* at ¶ 9.)

IKON was an Ohio corporation before changing its name to Ricoh USA on April 1, 2012. (Dkt. No. 1 at ¶ 11; *see also* Dkt. No. 29 at ¶ 10 n.2.) Ricoh Americas was a Delaware corporation that merged into Ricoh USA on April 1, 2016. (Dkt. No. 1 at ¶ 13; *see also* Dkt. No. 29 at ¶ 11 n.3.) Plaintiff is a former Ricoh employee. (Dkt. No. 29 at ¶ 8(a).)

## II.    Complaint Allegations

Plaintiff worked for Ricoh "from approximately May 2000 to November 2017 as a field service representative and technology service technician" in California. (*Id.* at ¶ 8(a)-(b).) Ricoh paid Plaintiff an hourly wage. (*Id.* at ¶ 18.) Ricoh also pays hourly wages to the California employees who perform work similar to the work performed by Plaintiff ("Ricoh Employees"). (*Id.* at ¶ 20.) Over the course of Plaintiff's employment, he was subjected to a litany of unlawful conduct related to compensation, meal and rest breaks, expense reimbursement, accrual and

payment of sick leave, wage statements, and maintenance of records, among others, as part of Ricoh's policies, practices, guidelines or procedures. (*See id.* at ¶¶ 21-44.) Ricoh Employees were subjected to the same unlawful employment practices. (*Id.* at ¶ 22.)

## III. Settlement Agreement

### A. Proposed Class

The proposed Settlement Class consists of "[a]ll current or former hourly non-exempt employees of Defendants who held the position of technology service technician, field support representative, and/or other positions engaged in similar work for Defendants in the state of California during the period of May 22, 2014 through the Preliminary Approval Date" (the "Class Period"). (Dkt. No. 37-1 at ¶ 58.)

### B. Proposed FLSA Collective

The proposed FLSA Collective is identical to the Settlement Class with the exception of the relevant time period, which begins one year after the Class Period. (*See id.* at ¶ 37 (defining "FLSA Collective" as covering "the period of May 22, 2015 through the Preliminary Approval Date" ("FLSA Period")).) Thus, all putative members of the proposed FLSA Collective fall within the Settlement Class.

### C. Payment Terms

Ricoh agrees to pay $2.2 million ("Gross Settlement Amount") to the Court-approved settlement administrator ("Claims Administrator")[5] within 15 days of the Court's order granting final approval. (*Id.* at ¶¶ 61, 73.) The Gross Settlement Amount is non-reversionary, and does not cover Ricoh's attorneys' fees, litigation costs, or employer taxes. (*Id.* at ¶ 61.) The Claims Administrator will pay the following from the Gross Settlement Amount: (1) $55,000 as consideration for release of the FLSA claim by participating FLSA collective members ("FLSA Settlement Amount"); (2) $75,000 to LWDA to cover PAGA civil penalties[6]; (3) $10,000 Service

---

[5] The parties have selected an experienced settlement administration firm, CPT Group, Inc. ("CPT"), to act as Claims Administrator. (*See* 37-1 at ¶ 16; *see also* Dkt. No. 37-5.)
[6] The Claims Administrator will allocate $100,000 from the Gross Settlement Amount for PAGA civil penalties. (Dkt. No. 37-1 at ¶ 62(f).) In accordance with Labor Code § 2699(i), the Claims Administrator will pay $75,000 to the LWDA and the remaining $25,000 will be allocated to the portion of the Gross Settlement Amount distributable to participating class members. (*See id.*)

Award to Plaintiff as Class Representative; (4) $733,333.33 to Class Counsel[7] for fees; (5) $15,000 to Class Counsel for costs; and (6) $35,000 to the Claims Administrator.[8]  (*Id.* at ¶¶ 46, 62(a)-(d), (f); *see also* Dkt. No. 42-2 at 4 (amending the Settlement Agreement to pay $35,000 to the Claims Administrator).)  The remainder, approximately $1,276,666.67 (the "Net Settlement Amount"), constitutes the portion distributable to class members who do not opt-out ("Class Member Shares").  (*Id.* at ¶¶ 46, 63(a).)

### 1. Individual Settlement Shares

#### a. Class Member Shares

Within 14 days of preliminary approval, Ricoh will provide the Claims Administrator with the number of workweeks that each individual class member worked during the class period.  (*Id.* at ¶ 63(a)(i).)  The Claims Administrator will then distribute the entire Net Settlement Amount to class members as follows:

> The Claims Administrator will calculate the aggregate total number of Workweeks worked by the Settlement Class during the Class Period based on Defendants' calculations set forth in paragraph 63(a)(i).  Class Workweek Value will be determined by dividing the Net Settlement Amount by the aggregate total of Workweeks worked. The Claims Administrator will calculate Class Members' estimated Class Member Share by multiplying the individual Class Member's total Workweeks by Workweek Value.

(*Id.* at ¶ 63(a)(ii).)  In other words, each class member will receive a pro rata share of the Net Settlement amount based on the number of weeks the individual worked during the class period. If an individual opts-out, the Claims Administrator will redistribute their estimated share of the Net Settlement Amount to participating class members.[9]  (*Id.*)

One-quarter (25%) of each Class Member's individual share "constitute[s] wages for purposes of IRS reporting."  (*Id.* at ¶ 63(d).)  The remaining 75% "constitute[s] payments for

---

[7] Plaintiff seeks to appoint Clark Law Group and United Employees Law Group as Class Counsel. (Dkt. No. 37 at 11.)

[8] The Settlement Agreement recognizes that the amounts payable to Class Counsel, the Claims Administrator, and Plaintiff as Class Representative are subject to Court approval.

[9] The Settlement Agreement provides that if 15% or more of the Settlement Class properly opt-out, Ricoh has "the right, but not the obligation to rescind the Settlement Agreement."  (Dkt. No. 37-1 at ¶ 69(b).)

liquidated damages, penalties, and interest." (*Id.*) The Claims Administrator will issue IRS W-2 forms for the wage payments, and IRS 1099 forms "for all other payments." (*Id.*) Class members are "exclusively liable for any and all of their respective tax liability" and "responsible for paying all applicable state, local, and federal income taxes on all amounts" received pursuant to the Settlement Agreement. (*Id.* at ¶ 65.)

### b.    FLSA Settlement Shares

The Claims Administrator will distribute the entire FLSA Settlement Amount, which is taken from the Gross Settlement Amount, to all class members eligible to opt-in to the FLSA Collective ("collective-eligible class members"). (*Id.* at ¶ 63(b).) Within 14 days of preliminary approval, Ricoh will provide the Claims Administrator with the total number of collective-eligible class members and the total number of weeks that each individual "worked during the FLSA Period." (*Id.* at ¶ 63(b)(i).) Each collective-eligible class member will receive a check from the FLSA Settlement Amount ("FLSA Settlement Share"). (*Id.* at ¶ 63(b).) Individuals who opt-in to the FLSA Collective by cashing that check will become "participating collective members." (*Id.*) The distribution will be as follows:

> Collective-Eligible Members who worked no more than [10] Workweeks during the FLSA Period shall receive an FLSA Settlement Share equal to [$20.00]. Participating Collective Members who worked more than [10] Workweeks during the FLSA Period shall receive an FLSA Settlement Share of [$20.00] plus an additional amount from the remainder of the FLSA Settlement Amount after [$20.00] is allocated to each Participating Collective Member. Such remainder of the FLSA Settlement Amount is to be distributed pro rata to Participating Collective Members who worked more than [10] Workweeks during the FLSA Period based on the number of Workweeks the Participating Collective Member worked in excess of [10].

(*Id.*) The Claims Administrator's calculation for determining the "additional amount" due Participating Collective Members who worked in excess of 10 workweeks during the FLSA Period tracks the calculation used to determine the Class Member Shares. (*Compare* Dkt. No. 37-1 at ¶ 63(b)(ii) *with id.* at ¶ 63(a)(ii).) The entirety of each Participating Collective Member's individual FLSA Settlement Share will "constitute payments for liquidated damages, penalties, and interest," and the Claims Administrator will issue 1099 forms for tax purposes. (*Id.* at ¶

63(d).)  Like class members, the participating collective members are "exclusively liable for any and all of their respective tax liability" and "responsible for paying all applicable state, local, and federal income taxes on all amounts" received pursuant to the Settlement Agreement.  (*Id.* at ¶ 65.)

Class members and collective-eligible class members have 45 days after the Class Administrator mails the Notice to dispute the amount of their individual workweeks shown on their respective Notices.  (*Id.* at ¶ 63(c).)

### 2. Unclaimed Funds

Class members and participating collective members must cash or deposit their checks within 90 days of issuance.  (Dkt. No. 42-2 at 7 (joint stipulation amending ¶ 74 of the Agreement).)  Sixty days after issuance of payment, the Claims Administrator will send a written reminder and call each individual who has an outstanding settlement check and remind them that the check "will expire and become non-negotiable" after the 90-day deadline.  (*Id.* at 8.)  If the amount of unclaimed funds after the 90-day deadline is less than $80,000, those funds will be distributed *cy pres* to the "East Bay Community Law Center's Community Economic Justice Clinic for its Services and/or Youth Advocacy Initiatives," within 5 days after expiration of the deadline.[10]  (*Id.*)

If the amount of unclaimed funds exceeds $80,000, the Claims Administrator will "make a second distribution on a pro rata basis to participating Class Members who previously cashed their settlement checks."  (*Id.*)  The second distribution checks will remain valid for 90 days.  (*Id.*)  Any funds remaining from the second distribution after expiration of the 90-day deadline will be remitted to the same *cy pres* beneficiary.  (*Id.* at 8-9.)

### D. Release

Class members agree to release Ricoh "and all of their former, present or future affiliated entities and third parties, including but not limited to parents, subsidiaries, partners, owners, shareholders, officers, directors, employees, agents, and subcontractors" (the "Released Parties")

---

[10] Plaintiff's counsel attests that neither Plaintiff nor his counsel have any affiliation with the *cy pres* recipient, nor has anyone associated with either Plaintiff or counsel "served on the board of directors" for the *cy pres* recipient.  (Dkt. No. 37-2 at ¶ 27.)

from all known and unknown wage claims under California law that arise out of the facts alleged in the second amended complaint during the Class Period. (Dkt. No. 37-1 at ¶¶ 54, 75.) The released claims do not include: "(1) the FLSA Claim; (2) claims for Worker's Compensation; (3) claims for unemployment or disability payments; (4) claims for discrimination, retaliation or harassment; (5) tort claims; (6) or any other claims that cannot be released as a matter of law." (*Id.* at ¶ 75.) Participating collective members also agree to release Ricoh and the Released Parties "from any known or unknown claims for unpaid wages, including overtime wages, under the FLSA based on the facts asserted in the operative complaint" arising during the FLSA Period. (*Id.* at ¶ 75(a).) In addition, Plaintiff, as class representative, agrees to a general release of Ricoh and the Released Parties from "any and all claims," including all unknown claims covered by California Civil Code § 1542. (*Id.* at ¶ 75(b).)

### E. Notice

Within 14 days of preliminary approval:

> Defendants shall deliver to the Claims Administrator and Class Counsel the Class List . . . containing for each Class Member, the following information: his or her (1) full name, (2) last known mailing address, (3) last known telephone number, (4) email address (if available), (5) social security number, (6) dates the Class Member held the position of technology service technician, field support representative or other similar position during the Class Period; (7) total number of Workweeks worked during the Class Period; (8) dates the Class member held the position of technology service technician, field support representative or other similar position during the FLSA Period (if any) and (9) total number of Workweeks worked during the FLSA period (if any).

(*Id.* at ¶ 68(a).) No later than 14 days after receiving the Class List containing the information above, the Claims Administrator must mail a "Notice Packet"[11] to identified class members "via first-class regular U.S. Mail." (*Id.* at ¶ 68(b).) The Claims Administrator will also send Notice

---

[11] The Settlement Agreement defines "Notice Packet" as including only the Notice "[f]or Class Members who are not eligible to opt-in to the FLSA Collective." (Dkt. No. 37-1 at ¶ 47.) If a class member is "eligible to opt-in to the FLSA Collective, the Notice Packet will also include the FLSA Claim Check Language advising the Collective-Eligible Class Member that if [he or she] does not opt out, [he or she] will get a second check with the language advising them that if [the] FLSA Claim Check is endorsed and/or cashed, [he or she] will have agreed to opt into the FLSA Collective, will become a Participating Collective Member, and will release all FLSA Claims pursuant to th[e] Agreement." (*Id.*)

Packets to individual class members via email if the class member has an email address. (*Id.*)

The Notice will include, among other information: a description of the lawsuit, including a brief overview of the claims in plain language; contact information for Plaintiff's counsel, Ricoh's Counsel,[12] and the Claims Administrator; the terms of the settlement including a summary of the settlement amount, its distribution, and the methodology for calculating the individual settlement shares for both the class and collective action; and the release of claims. (Dkt. No. 42-2, Ex. 1 at 12-20.) The Notice also informs class members of how to: (1) participate in both the class and collective actions; (2) opt-out of the Settlement Class by mailing a written "Request for Exclusion" to Claims Administrator within 45 days of the mailing of the Notice; (3) object to the settlement by mailing a timely written "Notice of Objection" or "Formal Objection" to the Court within 45 days of the mailing of the Notice; and (4) obtain a copy of the Settlement Agreement. (*Id.* at 17-22.) Class members are further notified that they may attend the final fairness hearing in person or through an attorney but are not required to do so. (*Id.* at 21-22.)

### DISCUSSION

A class action settlement agreement must be fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2). Where, as here, parties reach an agreement before class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

Similarly, court approval is generally required for settlement of FLSA collective actions. *See Camilo v. Ozuna*, No. 18-cv-02842-VKD, 2019 WL 2141970, at *6 (N.D. Cal. May 16, 2019).

---

[12] The Notice emphasizes, however, that individuals with questions regarding the settlement should contact Class Counsel or the Claims Administrator, not "Defendants or their attorneys, supervisors, or managers." (Dkt. No. 42-2, Ex. A at 15 ¶ 5.)

United States District Court
Northern District of California

However, Rule 23 class actions and FLSA collective actions are different proceedings that "impose distinct requirements." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018) (noting that class actions and FLSA collective actions "are creatures of distinct texts—collective actions of [29 U.S.C. § 216(b)] and class actions of Rule 23—that impose distinct requirements"). This is because conditional certification of a collective action under the FLSA—unlike conditional certification of a class action under Rule 23—"plays no . . . gatekeeping role" and "does not produce a class with an independent legal status or join additional parties to the action" who must then opt out of the suit. *Id.* (internal quotation marks, alterations, and citation omitted). Instead, putative members of an FLSA collective action must affirmatively opt-in and consent to be bound by a final judgment in the action. *See id.* at 1101, 1105 ("The sole consequence of a successful motion for preliminary certification is the sending of court-approved written notice to workers who may wish to join the litigation as individuals.") (internal quotation marks and citation omitted).

Thus, the Court addresses conditional certification of the class action and FLSA collective action separately.

## I. Conditional Certification of the Settlement Class

Class actions must meet the following requirements for certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to meeting the requirements of Rule 23(a), a putative class action must also meet one of the conditions outlined in Rule 23(b)—as relevant here, the condition that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Prior to certifying the class, the Court must determine that Plaintiff has satisfied his burden of demonstrating that the proposed class satisfies each element of Rule 23.

**A.      Rule 23(a)**

The Rule 23(a) factors are satisfied.  First, "there are approximately 900 individuals who fall in the Settlement Class."[13]  (Dkt. No. 37-2 ¶ 15.)  The putative class thus satisfies the numerosity requirement.  *See Ries v. Ariz. Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) ("While there is no fixed number that satisfies the numerosity requirement, as a general matter, a class greater than forty often satisfies the requirement, while one less than twenty-one does not.").

Second, the commonality requirement is satisfied because there are common questions of law and fact arising out of Ricoh's allegedly unlawful employment practices that effected all putative class members, who worked for Ricoh in California performing the same or similar work during the same time period.  *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 617 (N.D. Cal. 2013) (finding commonality requirement satisfied where class members were subject to the same challenged policies and procedures).  Third, the typicality requirement is similarly satisfied because Plaintiff's claims challenge a course of conduct that applied to all putative class members, and thus, all members suffered the same or similar injury.  *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."); *see also Bellinghausen*, 303 F.R.D. at 617 (finding the typicality requirement satisfied because the named plaintiff "allege[d] that he, like the other class members, worked for [d]efendant in California during the class period and was subject to the same wage-and-hour policies and procedures at issue in [the] litigation").

Finally, Plaintiff and class counsel appear to be adequate representatives of the class.  Plaintiff was employed by Defendants during the class period and allegedly injured by the same course of conduct common to all putative class members; thus, Plaintiff's interest in this litigation

---

[13] Of these 900, approximately 700 "fall into the FLSA Collective."  (Dkt. No. 37-2 at ¶ 16.)  As previously discussed, the only difference between the Settlement Class and FLSA Collective is "the relevant time period."  (*Id.* at ¶ 17.)

is aligned with that of the class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594-95 (1997) ("Representatives must be part of the class and possess the same interest and suffer the same injury as the class they seek to represent."). Plaintiff's counsel has experience litigating "well over 150 class, collective and representative actions and complex commercial matters," and "has served as class counsel, lead counsel and co-lead counsel in a majority of the matters." (Dkt. No. 37-2 ¶ 58.) Thus, it appears that Plaintiff's counsel is "qualified, experienced, and generally able to conduct the class action litigation." *See Bellinghausen*, 303 F.R.D. at 617.

## B. Rule 23(b)(3)

As previously discussed, Rule 23(b)(3) requires establishing the predominance of common questions of law or fact and the superiority of a class action relative to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3) includes the following nonexhaustive list of factors pertinent to the predominance and superiority analysis:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b). The Court concludes that there are no predominance or superiority concerns because the challenged policies are common to all class members.

### 1. Predominance

Rule 23(b)(3) first requires "predominance of common questions over individual ones" such that "the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). This "inquiry focuses on the relationship between the common and individual issues." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (internal quotation marks and citation omitted). In particular, the predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594. When common questions "present a significant aspect of the case [that] can be resolved for all members of the class with a single adjudication," there is justification for "handling the dispute on representative rather than on

an individual basis." *Delagarza v. Tesoro Ref. & Mktg. Co.*, No. C-09-5803 EMC, 2011 WL 4017967, at *10 (N.D. Cal. Sept. 8, 2011) (internal quotation marks and citation omitted).

The Court is satisfied that the core common questions in this case—the lawfulness of Ricoh's policies and practices regarding compensation, meal and rest breaks, expense reimbursement, accrual and payment of sick leave, wage statements, and maintenance of records, among others—predominate over any differences regarding its implementation of those policies with respect to individual employees. Accordingly, the Court concludes that common questions of law and fact predominate.

### 2. Superiority

A class action is a superior means of adjudicating a dispute "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino*, 97 F.3d at 1234. In evaluating superiority, "courts consider the interests of the individual members in controlling their own litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 514 (N.D. Cal. 2007), *modified*, 2007 WL 2220972 (N.D. Cal. Aug. 1, 2007), *aff'd sub nom.*, *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009). A class action is superior to individual litigation in this matter for several reasons.

First, there is no indication that members of the proposed class have a strong interest in individual litigation or an incentive to pursue their claims individually, given the amount of damages likely to be recovered relative to the resources required to prosecute such an action. *See Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (evaluating superiority under Rule 23(b)(3) and noting that "the class action is superior to maintaining individual claims for a small amount of damages"); *see also Gentry v. Super. Ct.*, 42 Cal. 4th 443, 457 (2007) (noting that "individual awards in wage-and-hour cases tend to be modest"), *abrogation on other grounds recognized in Williams v. Super. Ct.*, 3 Cal. 5th 531, 558 (2017). Second, any concerns over manageability of the class action in this case would not weigh in favor of individual litigation given that Ricoh's liability to "class members depends on common proof" regarding the allegedly unlawful employment practices at issue. *See Bowerman v. Field Asset*

United States District Court
Northern District of California

*Servs., Inc.*, 242 F. Supp. 3d 910, 936 (N.D. Cal. 2017) (recognizing as legitimate the defendant's "apprehension regarding manageability," but finding it "insufficient to tip the scales away from the superiority of proceeding as a class when [the defendant's] liability to over 100 class members depends on common proof"). Finally, class actions are preferred in wage-and-hour actions when individual employees may forgo pursuing their claims due to fear of retaliation. *See Williams*, 3 Cal. 5th at 558 (noting that fear of retaliation cuts in favor of "facilitating collective action so that individual employees need not run the risk of individual suits").

Accordingly, the Court concludes that conditional certification of the class for settlement purposes is proper.

## II. Conditional Certification of FLSA Collective Action

Under the FLSA, an employee may bring a "collective action" on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). Thus, a district court's approval of preliminary certification of an FLSA collective action is "conditioned on a preliminary determination that the collective as defined in the complaint satisfies the 'similarly situated' requirement of section 216(b)." *Campbell*, 903 F.3d at 1109 (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). A party plaintiff and putative collective members are "similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id.* at 1117.

"The limited statutory requirements of a collective action are independent of, and unrelated to, the requirements for class action under Rule 23, and, by omitting most of the requirements in Rule 23 for class certification, necessarily impose a lesser burden." *Id.* at 1112 (internal quotation marks and citations omitted). The court's "level of consideration is lenient" and focuses on whether the pleadings establish a "reasonable basis" for determining that the putative members are similarly situated. *Id.* "A grant of preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Id.*

Here, the complaint makes a plausible showing that Plaintiff is "similarly situated" to the putative collective members. Plaintiff alleges that he and all non-exempt Ricoh Employees that

14

compromise the FLSA Collective were subject to the same allegedly unlawful wage-and-hour policies. (*See* Dkt. No. 29 at ¶¶ 21-44, 186-96.) It is thus plausible that there are "similar issue[s] of law or fact material to the disposition" of the FLSA claim. *See Campbell*, 903 F.3d at 1117.

Accordingly, the Court grants conditional certification of the FLSA collective action.

## III.    Preliminary Approval of the Settlement Agreement

In determining whether a class action settlement agreement[14] is fair, adequate, and reasonable to all concerned, courts generally consider the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight . . . factors alone is" insufficient. *Id.* In such cases, courts must not only consider the above factors, but also ensure that the settlement did not result from collusion among the parties. *Id.* at 947. Because collusion "may not always be evident on the face of a settlement, . . . [courts] must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Id.* The *Bluetooth* court identified three such signs:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> (2) when the parties negotiate a "clear sailing" arrangement providing

---

[14] Courts must examine a class action settlement "as a whole, rather than the individual component parts, . . . for overall fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9 th Cir. 1998) (noting that "[t]he settlement must stand or fall in its entirety"). That said, the Court must also determine whether the Settlement Agreement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *See Camilo*, 2019 WL 2141970, at *10 (citing *Lynn's Food Stores, Inc.*, 679 F.2d 1350, 1353 (11th Cir. 1982)). Here, there is no indication that preliminary approval of the FLSA settlement is unfair given the similarity between the FLSA claims and class claims and the Court's consideration of the fairness factors relevant to class action.

for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id.* (internal quotation marks and citations omitted).

The Court cannot, however, fully assess such factors until the final approval hearing; thus, "a full fairness analysis is unnecessary at this stage." *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (internal quotation marks and citation omitted). At the preliminary approval stage, "the settlement need only be potentially fair." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. May 31, 2007). Preliminary approval is thus appropriate where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted).

### A. The Fairness Factors

#### 1. Settlement Process

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied that the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make . . . an appraisal of the settlement." *Acosta*, 243 F.R.D. at 396. Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id.*

Plaintiff submits the declaration of his counsel, R. Craig Clark, in support of the instant motion. (Dkt. No. 37-2; *see also* Dkt. No. 42-1 (supplemental declaration).) Mr. Clark attests that Plaintiff's counsel "conducted a thorough investigation into the facts and legal issues" in the case before mediation by: (1) interviewing Plaintiff and evaluating the documents and information he

provided; (2) propounding written discovery on Ricoh consisting of "eleven interrogatories and nine requests for production of documents," which "yielded hundreds of pages of documents including, but not limited to, policy and training documents and Plaintiff's time and payroll records"; (3) interviewing percipient witnesses; (4) obtaining "information and documents exchanged pursuant to the 'mediation privilege," which included a 20% sample of employee time records and wage statements and reimbursement data"; and (5) reviewing the documents and information "to evaluate the merits of Plaintiff's claims and Ricoh's projected liability." (Dkt. No. 37-2 at ¶ 52.)

The parties then "attended a full day of private mediation" with Ms. Klerman, "a well-respected and experienced class action mediator." (*Id.* at ¶ 11.) The parties engaged in "extensive negotiations" assisted by Ms. Klerman and presented their "respective positions on the legal and factual issues raised, as well as the asserted liability." (*Id.*) The parties "reach[ed] a settlement in principle" at the mediation, and afterwards "continued to negotiate the terms and conditions of the settlement" before reducing their agreement to writing. (*Id.*)

The use of an experienced private mediator and presence of discovery supports the conclusion that Plaintiff "armed with sufficient information about the case" to broker a fair settlement. *See Acosta*, 243 F.R.D. at 396; *see also Villegas*, 2012 WL 5878390, at *6 (finding two sessions of private mediation before an experienced mediator, which were "informed by . . . discovery," sufficient to "support the conclusion that the [p]laintiff was appropriately informed in negotiating a settlement"). Further, since Ricoh removed this action to federal court the parties have filed six joint case management conference statements, (*see* Dkt. Nos. 11, 20, 23, 25, 32, 34), and participated in a case management conference before the undersigned, (*see* Dkt. No. 12). Mr. Clark attests that parties' settlement negotiations have at all times been "adversarial, non-collusive, and at arm's length." (Dkt. No. 37-2 at ¶ 11; *see also* Dkt. No. 37-1 at ¶ 9 (noting that the Settlement Agreement "represents a compromise and settlement of highly disputed claims and defenses, as Plaintiff believes his asserted claims have merit and Defendants believe the defenses they asserted to such claims [also] have merit").)

Mr. Clark also details Ricoh's asserted defenses to the claims in this case. (Dkt. No. 42-1

at ¶¶ 10-14.)  Mr. Clark attests that in reaching the settlement amount, Plaintiff considered several factors, including Ricoh's defenses, "the uncertain outcome and risks of litigating complex actions, such as achieving and maintaining class certification and addressing manageability issues; issues of proof; the time and expense of litigating the case through trial;" and the likelihood of recovery under the PAGA.  (*Id.* at ¶ 15.)  Thus, there is no indication that Plaintiff rushed into settlement or was otherwise ill-informed about the case and could not "reasonably assess its strengths and value."  *See Acosta*, 243 F.R.D. 396.

On balance, the Settlement Agreement appears to be the product of serious, informed, non-collusive negotiations.  This factor thus weighs in favor of preliminary approval.

### 2.    Obvious Deficiencies

The Court must next consider "whether there are obvious deficiencies in the Settlement Agreement."  *See Harris*, 2011 WL 1627973, at *8.  Here, the Court finds no obvious deficiencies on the face of the Settlement Agreement or the stipulated amendment to same that would preclude preliminary approval.

### 3.    Lack of Preferential Treatment

The Court must next examine whether the Settlement Agreement "provides preferential treatment to any class member."  *See Villegas*, 2012 WL 5878390, at *7.  Under the Agreement, each Class Member may claim their pro rata share of the Net Settlement Amount based on their respective number of workweeks worked during the class period.  (Dkt. No. 37-1 at ¶ 63(a).)  The Agreement further provides that Plaintiff will also receive a $10,000 service award.  (*Id.* at ¶ 62(c).)

"Incentive awards are fairly typical in class action cases."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one").  Service awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general."  *Id.* at 958-59.  Although service awards are

viewed more favorably than incentive agreements, excessive awards "may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Id.* at 960 (internal quotation marks and citation omitted).

Plaintiff asserts that the service award is justified because he "has given up more than any other class member . . . [by] agree[ing] to release all known and unknown claims against [Defendants]." (Dkt. No. 37 at 30.) The Court notes, however, that the amount requested is higher than amounts typically awarded by courts in this Circuit. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (approving $5,000 to two plaintiff representatives of 5,400 potential class members in $1.75 million settlement); *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *37 (N.D. Cal. Apr. 1, 2011) (approving $5,000 incentive awards to each of 24 named plaintiffs in $27,000,000 settlement); *Hopson v. Hanesbrands, Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009) (approving $5,000 award to one member of 217-member class in $408,420 settlement). Indeed, Plaintiff's counsel recognizes that the amount "exceed[s] the typical incentive awards awarded in the Ninth Circuit," and attests that he "will address the propriety of the Service Award in the papers regarding final approval." (Dkt. No. 37-2 at ¶ 33 n.4; *see also* Dkt. No. 37 at 16 ("The appropriateness of the Service Award will be addressed in conjunction with Plaintiff's motion for attorneys' fees, costs[,] and service award.").)

Accordingly, the Court will defer ruling on the appropriateness of the amount of the requested Service Award until final approval. At this stage there is no indication that the Service Award in general constitutes "preferential treatment" that would defeat preliminary approval.

### 4. Range of Possible Approval

In determining whether the Settlement Agreement "falls within the range of possible approval," the Court must focus on "substantive fairness and adequacy" and consider Plaintiff's "expected recovery balanced against the value of the settlement offer." *See Tableware*, 484 F. Supp. 2d at 1080; *see also Harris*, 2011 WL 1627973, at *11 (noting that courts "must estimate

the maximum amount of damages recoverable in a successful litigation and compare that with the settlement amount" in determining "the value of the settlement against the expected recovery at trial") (internal quotation marks and citation omitted). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts only to a fraction of the potential recovery that might be available to class members at trial." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).

Here, Mr. Clark attests that in reaching the proposed settlement, Plaintiff's counsel considered:

> the information and documents obtained in the litigation and/or otherwise exchanged pursuant to the mediation privilege; the experience of the named Plaintiff; the strengths and weaknesses of the case; the size of the class/collective; the uncertain outcome and risk of litigating complex actions; such as this Action, including, but not limited to, achieving and maintaining class certification, addressing manageability issue, and issues of proof at trial; the time and expense in litigating a case through trial; Ricoh's defenses; the unsettled law as to whether PAGA allows for the recovery of unpaid wages under Labor Code § 558, and the non-reversionary nature of the settlement.

(Dkt. No. 37-2 at ¶ 53.) Mr. Clark further attests that based on the documents obtained and information available, Ricoh's exposure in this case is "approximately $20,285,268.80 for all claims" in this case, which "includes approximately $12,021,318.80 for unpaid wages ($8,014,212.53 for off-the-clock work and $4,007,106.27 for meal and rest period violations) and about $8,263,950 in civil penalties under the [PAGA]." (Dkt. No. 42-1 at ¶ 9.) Thus, the Gross Settlement Amount of $2.2 million "represents approximately 10.85% of the monetary relief sought" in this case. (*Id.* at ¶ 16.)

As previously discussed, Mr. Clark's supplemental declaration describes Ricoh's arguments and defenses regarding the claims at issue, as well as Ricoh's assertions that "individualized inquiries pertaining to each putative class member's experience would predominate" if this case were litigated. (*See id.* at ¶¶ 10-14.) Mr. Clark attests that the settlement amount is "reasonable in light of all the facts surrounding the claims and defenses," and describes how "[t]he valuation of Plaintiff's claims were . . . discounted" in light of specific risks and costs associated with this case. (*Id.* at ¶ 16.) The Court is satisfied at this stage that continued litigation

rather than settlement presents risks to Plaintiff and putative class members regarding *any* recovery. Thus, in sum, the risks and costs of continued litigation at least balance the benefit of the estimated payout to class members, warranting preliminary approval and comment from class members.

*** 

Accordingly, consideration of the fairness factors warrants preliminary approval of the Settlement Agreement.

### B.    Class Notice Plan

For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill*, 361 F.3d at 575 (internal quotation marks and citation omitted).

The notice requirements under Rule 23(c) are met.[15] The modified Notice describes the allegations and claims in plain language, defines a class member and FLSA Collective member, includes contact information for both Plaintiff's and Defendants' counsel and the Claims Administrator, and summarizes the settlement amount and its distribution. The Notice further describes the options available to class members, including instructions for opting out of the

---

[15] In addition to the requirements under Rule 23(c), the Notice complies with the Northern District's Procedural Guidance for Class Action Settlements, available at https://www.cand.uscourts.gov/ClassActionSettlementGuidance. Indeed, Plaintiff's motion for preliminary approval asserts that it has considered and complied with those guidelines. (*See* Dkt. No. 37 at 33.)

settlement and filing an objection. The Notice also informs class members that receiving a share of the class settlement will release certain claims against certain parties, and that opting-in to the FLSA Collective will release the FLSA claim. The Notice informs class members that they may appear at the final fairness hearing in person or through an attorney. It also directs class members to a website with more information, including the Settlement Agreement and pleadings. (*See generally* Dkt. No. 42-2, Ex. A at 12-23.) Finally, the Notice adequately advises how the class can review Class Counsel's motion for attorneys' fees and costs prior to the final approval hearing. *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010) (holding that class members must "have an opportunity to oppose class counsel's fee motion").

There are two errors, however, regarding the modified Notice. First, the Notice reflects the amended amount paid to the Claims Administrator ($35,000 instead of $30,000 (*see* Dkt. No. 42-2 at 4)), but the Notice's discussion of the Net Settlement Amount does not reflect that amendment. Instead, the Notice provides the previous Net Settlement Amount of $1,281,666.67. (*See* Dkt. No. 42-2, Ex. A at 16 ("The remaining portion of the Gross Settlement Amount, the Net Settlement Amount, is estimated to be one million two hundred eighty-one thousand six hundred sixty-six dollars and sixty-seven cents ($1,281,666.67).").) Thus, the Notice must be corrected to reflect the modified Net Settlement Amount resulting from the additional $5,000 paid to the Claims Administrator—$1,276,666.67. Second, the "Excluding Yourself From The Settlement Class" section provides that individuals opting-out of the settlement must: "clearly state that [they] are requesting to be ***included*** from the settlement." (*See id.* at 19 ¶ 18(2) (emphasis added).) The Notice must be corrected to state "excluded" instead of "included."

The notice plan itself is adequate. Within 14 days of preliminary approval Defendant will provide the Claims Administrator with the previously discussed Class List containing pertinent information regarding each putative class member. The Settlement Administrator must then mail the Notice to class members within 14 days, and also email the Notice if an email address is available. Prior to mailing the Notice, the Claims Administrator will run the list of class members through the United States Postal Service's "National Change of Address database," and if any Notices are returned as undeliverable, "the Claims Administrator will search for a more current

address" by rechecking the database and using "skip traces, and other reasonable methods" to attempt to identify a valid address and re-mail the Notice. (Dkt. No. 37-1 at ¶ 68(a)-(d).) After issuing the Notices, the Claims Administrator will provide weekly status reports to both Plaintiff's and Defendants' counsel detailing the number of Notices mailed, returned as undeliverable, and re-mailed. The weekly status reports will also include "the number of timely and valid" requests for exclusion, notices of objection, and FLSA Claim Forms received. (*Id.* at ¶ 68(e).) Class members have 45 days from the mailing of the Notice to either opt out of the Settlement Agreement or file a notice of objection.

These procedures appear sufficient to ensure that class members receive adequate notice of the settlement and an opportunity to opt-out or object. Accordingly, the Notice and notice plan support preliminary approval. Plaintiff must incorporate the corrections discussed above, however, prior to mailing the Notice.

### C. Attorneys' Fees

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941; *see also Staton*, 327 F.3d at 963 ("[A] district court must carefully assess the reasonableness of a fee amount spelled out in a class action settlement agreement."). Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to determine whether the requested fees are reasonable. *In re Mercury*, 618 F.3d at 992. The Ninth Circuit has established a benchmark of 25 percent of the common fund for attorneys' fees calculations under the latter method. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have . . . established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."). Although "[a] district court may depart from the benchmark . . ., it must be made clear by the district court how it arrives at the figure ultimately awarded." *Id.* at 1256-57.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party

reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The resulting figure may be adjusted upward or downward to account for several factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 941-42 (internal quotation marks and citation omitted). The party requesting fees bears the burden "of submitting billing records to establish that the number of hours it requested are reasonable," *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013), as well as "produc[ing] satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). The Ninth Circuit recommends that whether the lodestar or percentage-of-recovery method is used, the district court perform a cross-check using the other method to confirm the reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with the lodestar method will reveal if the amount requested is unreasonable in light of the hours reasonably expended). *See Bluetooth*, 654 F.3d at 944-45.

As previously discussed, the Settlement Agreement provides for a maximum award of $733,333.33 to Class Counsel in fees (one-third of the Gross Settlement Amount). (Dkt. No. 37-1 at ¶ 62(d).) Ricoh does not oppose Plaintiff's request. (*Id.*) If the Court does not award the entire amount requested, "the difference shall be included in the Net Settlement Amount" and distributed to Class Members. (*Id.*) Plaintiff's motion asserts that he "will address the propriety of the Class Counsel Fee Award and Class Counsel Costs Award in his motion for attorneys' fees, costs, and service award." (Dkt. No. 37 at 16; *see also* Dkt. No. 37-2 at ¶ 38 n.7 (attesting that "[a] non-privileged copy of [Plaintiff's counsel's] billing records will be submitted in conjunction with Plaintiff's motion for approval of an award of attorneys' fees").)

Accordingly, Plaintiff shall submit a motion for attorneys' fees including declarations and detailed billing records so that the Court may determine an appropriate lodestar figure, and to allow class members the opportunity to object to the requested fees. *See In re Mercury*, 618 F.3d

at 995 (holding that class members must "have an opportunity to oppose class counsel's fee motion" before the deadline for filing objections set forth in the class notice).

### D.    Costs

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (internal quotation marks and citation omitted).  To that end, district courts in this circuit regularly award litigation costs and expenses in wage-and-hour class actions.  *See, e.g., id.; Nwabueze v. AT&T Inc.*, No. C 09-01529 SI, 2014 WL 324262, at *2 (N.D. Cal. Jan. 29, 2014); *LaGarde v. Support.com, Inc.*, No. C 12-0609, 2013 WL 1283325, at *13 (N.D. Cal. Mar. 26, 2013).  Here, the Settlement Agreement provides that Plaintiff's counsel may obtain up to $20,000 in costs.  Plaintiff's counsel is instructed to submit an itemized summary of costs with its motion for attorneys' fees so that the Court can determine whether such costs are reasonable litigation expenses incurred for the benefit of the class.

### CONCLUSION

For the reasons stated above, the Court GRANTS preliminary approval of the class and collective action settlement as follows:

1.    The Clark Law Group and United Employees Law Group are appointed as Class Counsel.

2.    The Notice shall be corrected as set forth in this Order prior to mailing and mailed to class members in accordance with the notice plan by December 19, 2019.

3.    On or before January 2, 2020, Plaintiff shall file with the Court a copy of the Notice mailed to class members.

4.    The deadline for class members to submit a Request for Exclusion shall be 45-days after the initial mailing of the Notice, and no later than February 2, 2020.

5.    The deadline for class members to object to the Settlement Agreement shall be 45-days after the initial mailing of the Notice, and no later than February 2, 2020.

6.    Class Counsel shall file a motion for attorneys' fees and costs by February 20, 2020.

7.   Plaintiff shall file his Motion for Final Approval by February 20, 2020.  The motion shall include a copy of the Notice ultimately sent to the class along with the other information, as available, suggested by the Northern District of California Procedural Guidance for Class Action Settlements.

8.   The deadline for class members to object to Class Counsel's motion for attorneys' fees and costs shall be March 12, 2020.

9.   The parties shall appear before this Court for a final approval hearing on March 26, 2020 at 9:00 a.m. in Courtroom F, 450 Golden Gate Ave., San Francisco, California.

**IT IS SO ORDERED.**

Dated: November 25, 2019

_Jacqueline Scott Corley_
JACQUELINE SCOTT CORLEY
United States Magistrate Judge