R. Craig Clark (SBN 129219)
cclark@clarklawyers.com
Monique R. Rodriguez (SBN 304223)
mrodriguez@clarklawyers.com
Alicja A. Urtnowski (SBN 321215)
aurtnowski@clarklawyers.com
**CLARK LAW GROUP**
3258 Fourth Avenue
San Diego, CA 92103
Telephone: (619) 239-1321
Facsimile:  (888) 273-4554

Walter Haines (SBN 071075)
admin@uelglaw.com
**UNITED EMPLOYEES LAW GROUP**
5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649
Telephone: (562) 256-1047
Facsimile:  (562) 256-1006
*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUSTO DE LEON as an individual, on behalf of himself, and all other persons similarly situated,<br><br>          Plaintiff,<br><br>       v.<br><br>RICOH USA, INC., an Ohio corporation authorized to do business in the state of California; IKON OFFICE SOLUTIONS, INC., also known as Ricoh Usa, Inc., an Ohio corporation authorized to do business in the state of California; RICOH AMERICAS CORPORATION, a Delaware corporation previously authorized to do business in the state of California and succeeded by Ricoh USA, Inc.; and DOES 1 to 10 inclusive,<br><br>          Defendants. | CASE NO.: 3:18-cv-03725-JSC<br><br>[Assigned to Hon. Jacqueline Scott Corley, Courtroom F]<br><br>**CLASS & REPRESENTATIVE ACTION**<br><br>**PLAINTIFF AUGUSTO DE LEON'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT UNDER RULE 23(e) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND FOR ATTORNEYS' FEES AND COSTS PURSUANT TO RULES 23(h) AND 54 OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>Date:      March 26, 2020<br>Time:     9:00 a.m.<br>Courtroom:  F |

1

**TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on March 26, 2020 at 9:00 a.m., or as soon thereafter as this matter may be heard in Courtroom F of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Plaintiff Augusto De Leon ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his counsel of record, will, and hereby does, move for an order of:

1)    Final approval of the settlement of this class and representative action as set forth in the Joint Stipulation and Agreement for Class Action Settlement and Release of Claims and the Amendments to the Joint Stipulation and Agreement for Class Action Settlement and Release of Claims (together, "Settlement Agreement")[1], which were previously filed with the Court. (*See* ECF Nos. 37-1, 42-2.)

2)    Final certification of the Settlement Class and the FLSA Collective, as defined in the Settlement Agreement, for settlement purposes only;

3)    Claims Administration Costs in the amount of $30,000, or any other amount the Court deems just and reasonable, to the Claims Administrator;

4)    A Service Award in the amount of $10,000, or any other amount the Court deems just and reasonable, to Plaintiff Augusto De Leon;

5)    A Class Counsel Fees Award in the amount of $550,000, or any other amount the Court deems just and reasonable, to Class Counsel;

6)    A Class Counsel Costs Award in the amount of $ 14,305.04, or any other amount the Court deems just and reasonable, to Class Counsel;

7)    Entry of final judgment; and

8)    Grant any other and further relief that the Court deems just and proper, pursuant to Rules 23(e) and (h) and 54(d)(2) of the Federal Rules of Civil Procedure.

---

[1] All capitalized terms used herein are defined in and have the same meaning as used in the Settlement Agreement unless otherwise stated.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

1    Plaintiff's motion is based on this Notice, the accompanying Memorandum of Points

2   and Authorities, the Settlement Agreement, the declarations of R. Craig Clark, Walter Haines,

3   Augusto De Leon and Stephen Gomez (of CPT Group, Inc., Claims Administrator) and the

4   exhibits attached thereto, which are filed and served concurrently herewith, all papers and

5   pleadings on file in this action and upon any such oral argument and/or evidence that may be

6   presented to the Court at the time of the hearing.

7

8   Dated: February 20, 2020                    **CLARK LAW GROUP**

9

10                                          By: _____

11                                              R. Craig Clark
                                                Monique R. Rodriguez
12                                              Alicja A. Urtnowski
                                                *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                      3

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ……………………………………………………… 1

II.  PROCEDURAL AND FACTUAL BACKGROUND ……………….…………………. 3

   A.   Overview of the Action ………………………………………… 3

   B.   Mediation ………………………………………………….……... 3

   C.   The Settlement Class and the FLSA Collective …………………………..….. 3

   D.   Settlement Amounts and Calculation of Payments ………………………… 4

      1.   FLSA Settlement Amount and FLSA Settlement Share ……...…………..…. 4

      2.   Class Member Share …………………………………….…………..….. 5

      3.   PAGA Allocation ……………………………………………...…..….. 5

   E.   Administration Costs, Service Award and Attorneys' Fees and Costs ……………. 5

      1.   Claims Administration Costs …………………………………………. 5

      2.   Class Representative Service Award …………………………………. 5

      3.   Attorneys' Fees and Costs …………………………………………. 6

   F.   Notice Procedure ……………………………..……………………..……... 6

   G.   Exclusion Requests and Objections …………………..…...………..…….……. 7

   H.   Unclaimed Funds and *Cy Pres* Recipient ………………………………. 7

III. CERTIFICATION OF THE SETTLEMENT CLASS AND FLSA COLLECTIVE ……. 7

   A.   The Court Should Affirm Its Certification of the Settlement Class ………………. 7

   B.   The Court Should Affirm Its Certification of the FLSA Collective ………..……. 8

IV.  THE SETTLEMENT SHOULD BE FINALLY APPROVED ………..……………..... 9

   A.   The Fairness Factors Are Satisfied ………………………..……………………. 9

      1.   The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation ………….…..……………….… 10

      2.   Risk of Maintaining Class Action Status Through Trial ……...………..... 11

      3.   Amount Offered in Settlement …………..………………...……………. 12

i

4.   Experience and Views of Counsel ………….…..………………….……… 13

5.   Presence of a Government Participant ………………...….……………13

6.   Favorable Reaction From Class Members ……………....……………. 14

7.   The Settlement Passes Scrutiny of Collusion ……………..…………… 15

V.   THE FLSA SETTLEMENT SHOULD BE FINALLY APPROVED ………………. 16

VI.   THE PAGA ALLOCATION SHOULD BE APPROVED …………………………… 16

VII.   APPROVAL OF THE REQUESTED ADMINISTRATION COSTS, SERVICE AWARD
AND ATTORNEYS' FEES AND COSTS IS APPROPRIATE ………..…...……..… 17

A.   Administration Costs Are Reasonable ………………………….…………… 17

B.   Service Award to the Class Representative is Justified ..………...…………..… 18

C.   The Class Counsel Fees Award is Fair and Reasonable ………………..……… 20

1.   The Fees Sought Are a Reasonable Percentage of the Fund ……………… 21

2.   A Lodestar Cross-Check Supports the Reasonableness of the
Fees Sought ……………………………………………………… 21

i.   The Hourly Rates Requested are Reasonable ………...……………… 22

ii.   The Number of Hours Claimed is Reasonable …………..………..…… 23

D.   The Class Counsel Costs Award is Reasonable ……………...……………… 23

VIII.   CONCLUSION …………………………………..………………….………… 24

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Acosta v. Frito-Lay, Inc.*,
    2018 U.S. Dist. LEXIS 75998 (N.D. Cal. May 4, 2018) …………....……… *in passim*

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ………………..…………………………..………….. 21

*Camilo v. Ozuna*,
    2019 U.S. Dist. LEXIS 83794 (N.D. Cal. May 16, 2019) ………...…………….... 16

*Campbell v. City of Los Angeles*,
    903 F.3d 1090 (9th Cir. 2018) ……………………………………….…....… 8

*Chu v. Wells Fargo Investments, LLC*,
    2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 15, 2011) …………...…………..... 17

*Churchill Vill., LLC v. Gen Elec.*,
    361 F.3d 566 (9th Cir. 2004) ………………………………………………....… 9

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) …………………………………..…………....… 9

*Cunningham v. Cnty of L.A.*,
    879 F.2d 481 (9th Cir. 1988) …………………………………………….....… 21

*Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) …………….…………………………….....… 10

*Garner v. State Farm Mutl. Auto. Ins. Co.*,
    2010 U.S. Dist. LEXIS 94977 (N.D. Cal. Apr. 22, 2010) ……...………………..... 14

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) …………………….…………………………….… 24

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) …………………….…………………....… 9, 15, 20, 21

iii

*In re Mercury Interactive Corp.*,
     618 F.3d 988 (9th Cir. 2010) …………………..……………………………..…………… 20

*In re Pac. Enters. Sec. Litig.*,
     47 F.3d 373 (9th Cir. 1995) ………………………………………………..... 13

*Lynn's Food Stores, Inc. v. United States*,
     679 F.2d 1350 (11th Cir. 1982) ……………………..…………………………. 16

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
     221 F.R.D. 523 (C.D. Cal. 2004) ……………………..…………..… 12, 13, 15

*Officers for Justice v. Civil Serv. Com.*,
     688 F.2d 615 (9th Cir. 1982) ………………………………………..… 10, 12

*Ontiveros v. Zamora*,
     303 F.R.D. 356, 375 (E.D. Cal. 2014) ……………………....…………………... 23

*Rodriguez v. West Publ'g Corp.*,
     563 F.3d 948 (9th Cir. 2009) …………………………………..… 10, 18

*Smith v. Am. Greetings Corp.*,
     2016 U.S. Dist. LEXIS 66247 (N.D. Cal. May 19, 2016) …………...…………..… 17

*Staton v. Boeing Co.*,
     327 F.3d 938 (9th Cir. 2003) ………………..………………………..…. 9, 21

*Van Vranken v. Alt. Richfield Co.*,
     901 F.Supp. 294 (N.D. Cal. 1995) …………………………………..…. 18

*Willner v. Manpower Inc.*,
     2015 U.S. Dist. LEXIS 80697 (N.D. Cal. June 20, 2015) …………...…………..… 17

**Statutes**

California Civil Code
     Section 1542 ……………………………………………..………… 2, 6, 19

Federal Rules of Civil Procedure
     Rule 23 …………………………………………………………......1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

Rule 23(a) ……………………………………..……………….….. 8

Rule 23(b) ……………………………………..……………….….. 8

Rule 23(b)(3) …………………………………………………….…. 8

Rule 23(e) …………………………………………..………….….. 2

Rule 23(e)(2) ……………………………………………………… 9

Rule 23(h) ……………………………………….……………..... 2, 20

Rule 52 ………………………………………..……………….….. 1

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Pursuant to Rules 23 and 52 of the Federal Rules of Civil procedure, Plaintiff Augusto De Leon ("Plaintiff"), on behalf of himself and all others similarly situated, seeks (1) final approval of the settlement of this class and representative action as set forth in the Joint Stipulation and Agreement for Class Action Settlement and Release of Claims and the Amendments to the Joint Stipulation and Agreement for Class Action Settlement and Release of Claims (together, "Settlement Agreement") [2]; (2) final certification of the Settlement Class and the FLSA Collective, as defined in the Settlement Agreement, for settlement purposes only; (3) Claims Administration costs in the amount of $30,000 to the Claims Administrator; (4) a Service Award in the amount of $10,000, or any other amount the Court deems just and reasonable, to Plaintiff Augusto De Leon; (5) A Class Counsel Fees Award in the amount of $550,000, or any other amount the Court deems just and reasonable, to Class Counsel; (6) a Class Counsel Costs Award in the amount of $14,305.04, or any other amount the Court deems just and reasonable, to Class Counsel; (7) entry of final judgment; and (8) any other and further relief that the Court deems just and proper.

Plaintiff and Class Counsel dedicated significant time, energy, and resources into litigating this lawsuit against Defendants Ricoh USA, Inc., IKON Office Solutions, Inc., and Ricoh Americas Corporation (collectively, "Ricoh" or "Defendants"). Through their collective efforts, the parties to this litigation were able to successfully negotiate the Settlement Agreement, which was preliminary approved by this Court on November 25, 2019. The Settlement Agreement provides for a non-reversionary Gross Settlement Amount of $2,200,000 as a compromise of the disputed claims against Ricoh.

The settlement is a fair, adequate and reasonable result in this litigation. The terms of the Settlement Agreement provide for considerable monetary relief to the Class Members

---

[2] This motion incorporates by reference all of the defined terms in the Settlement Agreement. To the extent the terms are defined in the Settlement Agreement, all defined terms contained in this motion shall have the same meaning as set forth in the Settlement Agreement.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

and/or Collective-Eligible Members, while ensuring a timely resolution of the disputed claims and avoiding the risks associated with continued litigation. The settlement was achieved as the result of zealous advocacy and arm's length bargaining, overseen by well-respected mediator, Lisa Klerman, Esq. The settlement does not provide for preferential treatment as all Class Members and/or Collective-Eligible Members receive a proportional share based on the total number of weeks worked for Ricoh. As a testament to the fairness of the settlement, the response from Class Members and/or Collective-Eligible Members has been positive as only one person has requested exclusion and there has not been a single objection raised. Therefore, final approval of the settlement is appropriate.

Additionally, the requested Administration Costs, Service Award, Class Counsel Fees Award, and Class Counsel Costs Award are warranted, particularly because they were negotiated only after an agreement to settle this Action was reached. The Settlement Agreement estimated $35,000 as costs for administration of the settlement. The Notice Packet informed Class Members and/or Collective-Eligible Members that the estimated costs of $35,000, if approved, was to be deducted from the Gross Settlement Amount. The actual Administration Costs requested is $30,000, this means that $5,000 will be added to the Net Settlement Amount for distribution of the Settlement Class Members. Approval of the Administration Costs is appropriate.

The Settlement Agreement also contemplates a Serviced Award to Plaintiff Augusto De Leon in the amount of $10,000, which was to be deducted from the Gross Settlement Amount. The Service Award is compensation for the time, effort, and risks Plaintiff De Leon took in prosecuting this Action, as well as his agreement to give up more than any other Class Member and/or Collective-Eligible member by waiving the rights afforded to him by California Civil Code section 1542. Plaintiff's dedication and diligence provided Class Counsel with the knowledge and tools that they needed to negotiate a settlement that was in the best interest of the Class Members and/or Collective-Eligible Members.  Therefore, a Service Award in the amount of $10,000, or any other amount deemed reasonable by the Court, is deserved.

2

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

Class Counsel agreed to represent Plaintiff and the members of the Settlement Class without any guarantee that they would receive payment for their services or reimbursement for any of the litigation costs they reasonably incurred to litigate the Action. Class Counsel has expended 1,160.10 hours and incurred $528,376.00 in fees prosecuting this action. Class Counsel also acquired $14,305.04 in litigation costs and expenses. The Settlement Agreement anticipated that Class Counsel would seek up to $733,33.33 in fees and $15,000 in costs. Class Counsel seeks less than the amounts anticipated, resulting in a benefit to the Settlement Class. Approval of the Class Counsel Fees Award and Class Counsel Costs Award at the amounts requested, or any other amounts deemed just and reasonable by this Court, is warranted.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

### A.    Overview of the Action

This is a class, collective and representative action is brought by Plaintiff De Leon on behalf of himself and all current or former hourly, non-exempt employees of Ricoh who held titles including, but not limited to, technology service technician, field support representative and/or other positions engaged in similar work for Ricoh in the state of California against Ricoh for damages, civil penalties, restitution and injunctive relief.  (EFC No. 29, Second Amended Complaint ["SAC"].)

### B.    Mediation

The parties attended a full day of private mediation with well-respected mediator Lisa Klerman, Esq. in Los Angeles, California. (ECF No. 37-2, Declaration of R. Craig Clark ["Clark Decl."] ¶ 11.) After extensive negotiations and with the assistance of Ms. Klerman, the parties reached a principle settlement. (*Id*.) Thereafter, the parties negotiated the terms and conditions of the settlement and reduced their agreement to writing. (*Id*.) The Settlement Agreement is currently before this Court for final approval. (*See* ECF Nos. 37-1, 42-2.)

### C.    The Settlement Class and the FLSA Collective

The Settlement Agreement defines the Settlement Class as follows:

All current or former hourly non-exempt employees of Defendants who

3

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

held the position of technology service technician, field support representative and/or other positions engaged in similar work for Defendants in the state of California during the period of May 22, 2014 through November 25, 2019.

(ECF No. 37-1, Joint Stipulation and Agreement for Class Action Settlement and Release of Claims ["Agreement"] ¶ 58.) The Settlement Agreement defines the FLSA Collective as follows:

All current or former hourly non-exempt employees of Defendants who held the position of technology service technician, field support representative, and/or other positions engaged in similar work for Defendants in the state of California during the period of May 22, 2015 through November 19, 2019.

(*Id.* at ¶ 37.) The class and collective definitions are the same as the definitions outlined in the operative complaint. (*Cf.* SAC ¶ 48.)

**D.    Settlement Amounts and Calculation of Payments**

The Settlement Agreement provides that Ricoh is to pay a non-reversionary sum of $2,200,000 ("Gross Settlement Amount") to resolve this Action. (Agreement at ¶¶ 42, 61.) The Gross Settlement Amount does not include Employer Taxes, but is inclusive of all payments to Participating Class Members, to Participating FLSA Collective Members, to the LWDA, to the Claims Administrator, to Plaintiff, and to Class Counsel. (*Id.*)

**1.    FLSA Settlement Amount and FLSA Settlement Share**

The FLSA Settlement Amount is $55,000. (Agreement at ¶ 39.) All Collective-Eligible Class Members will receive a FLSA Claim Check that, if they elect to cash, will cause them to opt-into the FLSA Collective as a Participating Collective Member and to have release their FLSA Claim. (*Id.* at ¶¶ 62(b), 63(b), 71, 75.) Each Participating Collective Member who worked no more than ten (10) Workweeks during the FLSA Period will receive an FLSA Settlement Share equal to $20.00 plus an additional amount from the remainder of the FLSA Settlement Amount after $20.00 is allocated to each Participating Collective Member. (*Id.* at ¶ 63(b).) The remainder of the FLSA Settlement Amount will be distributed *pro rata* to Participating Collective Members who worked more than ten (10) Workweeks during the FLSA Period. (*Id.*)

### 2.    Class Member Share

All Class Members who do not exclude themselves from the settlement will receive a check for their Class Member Share, which is a *pro rata* share of the Net Settlement Amount. (*Id*. at ¶¶ 62(a), 63(a).) The Claims Administrator will calculate each Class Member's share by multiplying the individual Class Member's total work weeks by the Workweek value, which is the Net Settlement Amount divided by the aggregate total number of Workweeks worked by the Class Members. (*Id*.) All Class Members who do not request exclusion will be bound by the terms of the Settlement Agreement and the Release of Claims. (*Id*. at ¶¶ 69(a), 75.)

### 3.    PAGA Allocation

A total of $100,000 will be allocated from the Gross Settlement Amount as civil penalties under the Private Attorneys General Act ("PAGA"). (*Id*. at ¶ 62(f).) As provided for by the statute, $75,000 (or 75%) will be paid to the LWDA as the LWDA Payment and the remaining $25,000 (or 25%) will allocated to the Net Settlement Amount for payment to Participating Class Members. (*Id*.)

### E.    Administration Costs, Service Award and Attorneys' Fees and Costs

### 1.    Claims Administration Costs

CPT Group, Inc. ("CPT") is the appointed Claims Administrator who is responsible for administering the settlement in accordance with the Settlement Agreement and orders of the Court (*Id*. at ¶¶ 16, 66.)  It was estimated that the costs to administer the settlement would be $35,000. (ECF No. 42-2, Amendments to the Joint Stipulation and Agreement for Class Action Settlement and Release of Claims ["Amended Agreement"] § 2, ¶ 1.) CPT's charge for administering the settlement in this action is $30,000. (Declaration of Stephen Gomez of CPT Group, Inc. ["Gomez Decl."] ¶ 19.)

### 2.    Class Representative Service Award

The Settlement Agreement contemplates a Serviced Award to Plaintiff Augusto De Leon in the amount of $10,000, which is to be deducted from the Gross Settlement Amount. (Agreement at ¶¶ 57, 62(c), 75(b).) The Service Award is compensation for the time, effort,

and risks Plaintiff De Leon took in prosecuting this Action, as well as his agreement to give up more than any other Class Member and/or Collective-Eligible member by waiving the rights afforded to him by California Civil Code section 1542. (*Id.*)

### 3. Attorneys' Fees and Costs

Class Counsel may seek a Class Counsel Fee Award of up to $733,333.33 and a Class Counsel Costs Award of not more than $15,000 under the Settlement Agreement. (*Id.* at ¶ 62(d).) Class Counsel seeks a Class Counsel Fee Award of $550,000 (25% of the Gross Settlement Amount) as it has expended 1,160.10 hours resulting in a lodestar of $528,376. (Declaration of R. Craig Clark ISO Final Approval ["Clark Final Approval Decl."] ¶¶ 21-22, Exh. 1; Declaration of Walter Haines ISO Final Approval ["Haines Final Approval Decl."] ¶¶ 6-7.) Class Counsel anticipates that it will spend another 40 hours on this case until its final resolution. (Clark Final Approval Decl. ¶ 21.)

Class Counsel seeks a Class Counsel Costs Award of $14,305.04 for litigation costs [$13,805.04 (actually incurred) + $500 (estimated costs)]. (Clark Final Approval Decl. ¶¶ 24-25, Exh. 2, Haines Final Approval Decl. ¶ 9.)

### F. <u>Notice Procedure</u>

In accordance with the Court's Order re Preliminary Approval of Class Action Settlement, Ricoh provided CPT with the Class List. (Gomez Decl. ¶ 3.) The Class List contained the name, address, telephone number, email address (if available), Social Security number, weeks worked, FLSA weeks worked, and other employment information for 991 individuals. (*Id.*) The next day, CPT conducted a National Change of Address Search to update the mailing addresses provided. (*Id.* at ¶ 4.)

On December 19, 2019, CPT mailed Notice Packets to all 991 individuals. (*Id.* at ¶ 7.) Of the Notice Packets mailed, 935 also included the FLSA Claim Check Language. (*Id.* at ¶ 8.) CPT also emailed the respective Notice Packets to thirty-six (36) individuals for whom an email address was provided. (*Id.* at ¶ 9.)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

Of the Notice Packets mailed, a total of twenty-seven (27) Notice Packets were returned by the United States Postal Office, of which five (5) included a forwarding address. (*Id*. at ¶ 10.) CPT performed a skip trace for the other twenty-two (22) Notice Packets, located an updated address and re-mailed twenty (20) of the Notice Packets. (*Id*. at ¶¶ 10-11.) A total of twelve (12) Notice Packets were ultimately deemed undeliverable. (*Id*. at ¶ 11.)

### G.    Exclusions and Objections

The last day for Class Members and/or Collective-Eligible Members to submit a request for exclusion, objection, or dispute of workweeks was February 3, 2020. (*Id*. at ¶ 12.) CPT did not receive any objections or disputes to workweek information and has only received one (1) request for exclusion. (*Id*. at ¶¶ 13-14.)

### H.    Unclaimed Funds and *Cy Pres* Recipient

Any checks issued pursuant to the settlement in this Action will be valid for a period of ninety (90) days. (Amended Agreement § II, ¶ 5.) Following the ninety (90) day period, if the amount of unclaimed funds is less than $80,000, the Claims Administrator will donate, within five (5) calendar days, the funds to the East Bay Community Law Center's Community Economic Justice Clinic for its Services and/or Youth Advocacy Initiatives as a *cy pres* beneficiary. (*Id*.) If the amount of unclaimed funds is equal to or more than $80,000, the Claim Administrator will make a *pro rata* distribution of the funds to the Participating Class Members who previously cashed their settlement checks. (*Id*.) Any funds that remain after ninety (90) days of the second distribution will be remitted to East Bay Community Law Center's Community Economic Justice Clinic for its Services and/or Youth Advocacy Initiatives, within five (5) calendar days. (*Id*.)

## III.    CERTIFICATION OF THE SETTLEMENT CLASS AND FLSA COLLECTIVE

### A.    The Court Should Affirm Its Certification of the Settlement Class

To achieve certification, class actions must meet the following requirements:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defense of the representative parties are

7

1   typical of the claims or defense of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.

2

3   (Fed. R. Civ. P. 23(a).) Additionally, a class action must meet one of the conditions outlined in

4   Rule 23(b), such as the condition that "questions of law or fact common to the class

5   predominate over any questions affecting only individual members, and that the class action is

6   superior to other available methods for fairly and efficiently adjudicating the controversy."

7   (Fed. R. Civ. P. 23(b)(3).)

8       In granting preliminary approval of the settlement on November 25, 2019, this Court

9   determined that the numerosity requirement was satisfied because there are over 900

10  individuals in the Settlement Class. (ECF. No. 43, Order re Preliminary Approval of Class

11  Action Settlement ["Prelim. Approval Order"] p. 11.) The commonality requirement was also

12  satisfied because there are common questions of law and fact arising out of Ricoh's allegedly

13  unlawful employment practices that affected all putative class members. (*Id*.) This court ruled

14  that Plaintiff's claims were typical of all putative class members because they all suffered the

15  same or similar injury and that Plaintiff and Class Counsel appear to be adequate

16  representatives. (*Id*. at pp. 11-12.) Lastly, the Court concluded that the core common questions

17  in this case predominate over any differences regarding its implementation of Ricoh's policies

18  with respect to individual employees. (*Id*. at p. 13.)

19      There have been no subsequent events that would cast doubt on the Court's

20  determination. Therefore, Plaintiff requests that the Court affirm its certification of the

21  Settlement Class, for settlement purposes only.

22      **B.    The Court Should Affirm Its Certification of the FLSA Collective**

23      Certification of an FLSA collective action, for settlement purposes, requires a

24  preliminary determination that the collective, as defined in the complaint, be similarly situated

25  to the plaintiff to the extent that they share a similar issue of law or fact material to the

26  disposition of their FLSA claims. (*Campbell v. City of Los Angeles*, 903 F.3d 1090, 1109-117

27  (9th Cir. 2018).)

28

8

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

This Court previously ruled that the complaint makes a plausible showing that Plaintiff is "similarly situated" to the putative collective members as he alleges that he and other non-exempt Ricoh employees were subject to the same allegedly unlawful policies. (Prelim. Approval Order at p. 15.) Nothing has occurred that would cast doubt on the Court's determination, thus Plaintiff requests that this Court affirm its certification of the FLSA Collective, for settlement purposes only.

## IV.    THE SETTLEMENT SHOULD BE FINALLY APPROVED

There is a strong judicial policy in the Ninth Circuit that favors the settlement of class actions. (*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).) When a settlement takes place prior to class certification, courts must scrutinize the proposed compromise to authorize the propriety of the certification and the fairness of the settlement. (*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).)  A settlement should only be approved if it is "fair, reasonable and adequate." (Fed. R. Civ. P. 23(e)(2).)

### A.    The Fairness Factors Are Satisfied

Courts generally consider the following factors when determining whether a settlement is fair, reasonable, and adequate:

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the state of the proceedings; (6) the experience and views of counsel (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed class.

(*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) *quoting Churchill Vill., LLC v. Gen Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).) When a settlement is negotiated prior to class certification, courts must scrutinize the fairness factors by probing into whether the settlement is the result of collusion and whether class counsel has put their own self-interest or the interest of certain class members before the class as a whole. (*Id*. at 946-947.) The court, therefore, should consider three warning signs of potential collusion:

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

1

2

3

4
> (1) When class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded; (2) When the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from the class funds without objection by defendant; and (3) When the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund. (*Id.*)

5

6
### 1.    The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

7    While the court is to consider the strength of plaintiff's case on the merits balanced

8 against the amount offered in settlement, the court need not reach an ultimate conclusion about

9 the merits of the dispute. (*Acosta v. Frito-Lay, Inc.*, 2018 U.S. Dist. LEXIS 75998 *21 (N.D.

10 Cal. May 4, 2018).) Rather, the court's evaluation is "nothing more than an amalgam of

11 delicate balancing, gross approximations and rough justice." (*Officers for Justice v. Civil Serv.

12 Com.*, 688 F.2d 615, 625 (9th Cir. 1982) *citing Detroit v. Grinnell Corp.*, 495 F.2d 448, 468

13 (2d Cir. 1974).) The reality is that "parties, counsel, mediators, and district judges naturally

14 arrive at a reasonable range of settlement by considering the likelihood of a plaintiff's or

15 defense verdict, the potential recovery, and the chances of obtaining it, discounted to present

16 value." (*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).)

17    This Action alleges that Ricoh failed to pay minimum wages, straight time and overtime

18 compensation; failed to provide legally compliant meal and/or rest periods or compensation in

19 lieu thereof; failed to reimburse for necessary work expenses; failed to pay all wages owed

20 upon discharge; failed to furnish accurate itemized wage statements; failed to maintain

21 accurate records; violated California' Unfair Competition Law; violated California's PAGA

22 statute; and violated the Fair Labor Standards Act. (SAC.)

23    Plaintiff believes that his claims are meritorious, while Ricoh believes that their

24 defenses have merit. (Agreement ¶ 9.) However, Plaintiff recognizes that this class action is

25 not without risk. (ECF No. 42-1, Supplemental Declaration of R. Craig Clark ISO Preliminary

26 Approval ["Suppl. Clark Decl."] ¶ 15.) For instance, Ricoh has consistently asserted that the

27 Action is unmanageable because individualized issues predominate. (*Id.* at ¶¶ 10, 13, 16.)

28

Ricoh contends that it was their policy and practice to advise and train putative class members of California's meal and rest period requirements by using a 59-slide presentation. (*Id*. at ¶ 10.) Ricoh also asserts that it distributed and made its written meal and rest period policies available to all Ricoh employees by posting them at local offices and on its intranet system. (*Id*.) Ricoh further asserts that putative class members were expected to schedule their workday within the parameters afforded by California law and that all putative class members had to record their hours worked, while attesting that their hours were true and correct. (*Id*.) Ricoh also opposes Plaintiff's assertion that the demands placed on putative class members required them to work-off-the-clock or forgo meal and/or rest periods because putative class members were evaluated based on the infrequency of their call-back rework, not their frequency. (*Id*. at ¶ 11.) Ricoh opposes Plaintiff's assertion that it does not have a policy and practice of failing to pay overtime wages or reimbursement as it allegedly implements a proper rounding and reimbursement policy. (*Id*. at ¶¶ 12, 14.)

If any of Ricoh's contentions are found to be true, there is a substantial risk that the putative class members would recover substantially less than the Gross Settlement Amount and possibly not receive *any* recovery, particularly because recovery under the PAGA is discretionary. Even if Plaintiff were able to obtain recovery in this Action, Ricoh may appeal any adverse judgment as they have indicated that they would actively oppose certification. The time, expenses and resources to litigate this Action, including the potential appeals, would potentially outweigh *any* benefits offered to the Class Members and/or Collective-Eligible Class Members. (*Id*. at ¶ 15.) Given the challenges Plaintiff would continue face in this Action compared with the finality and speed of recovery under the settlement, approval of the settlement if favorable.

### 2. Risk of Maintaining Class Action Status Throughout Trial

Throughout this litigation, Ricoh has represented that it will aggressively oppose any motion for class certification as it contends that the Action is unmanageable because individualized issues predominate. (Suppl. Clark Decl. ¶¶ 10, 13, 16.) Ricoh's defense that its

11

service and support employees are out in the field and left to their own devices, along with Ricoh's contention that service and support employees confirm and certify that their time sheets are accurate suggests that Ricoh will use such facts to support its contention that individualized issues predominate. (*Id*. at ¶¶ 10-14.) Plaintiff will undoubtedly have a difficult time establishing that individualized issues do not predominate and that the Action is manageable. If certification is granted, Plaintiff will likely have to expend the time and resources to combat a motion to decertify and/or motion for summary judgment. Additionally, Plaintiff will have to demonstrate through trial that the case is in fact manageable. Based on the foregoing, there is no doubt that achieving and maintaining certification through trial would be both difficult and expensive. Therefore, settlement is favorable.

### 3.    Amount Offered in Settlement

In determining whether the amount offered in settlement is fair, the court should look at the settlement as a whole. (*Officers for Justice*, 688 F.2d at 628.) Additionally, a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery at trial. (*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004).)

In this case, the parties have agreed to a non-reversionary Gross Settlement Amount of $2,200,000. (Agreement at ¶ 42, 61.) Based on Class Counsel's evaluation of the case, Ricoh's exposure was estimated to be approximately $20,285,268.80 for all claims, which includes approximately $12,021,318.80 in unpaid wages ($8,014,212.50 for off-the-clock work and $4,007.106.27 in meal and rest period violations) and about $8,263,950 in civil penalties under the PAGA. (Suppl. Clark Decl. at ¶ 9.)  The Gross Settlement Amount represents about 10.85% of the monetary relief sought by the Action. (*Id*. at ¶ 16.) After deduction of the FLSA Settlement, the LWDA Payment, the Service Award, the Class Counsel Fees Award and the Class Counsel Costs Award, the Net Settlement Amount, estimated to be $1,281,666.67, is to be paid to the members of the Settlement Class. (Gomez Decl. ¶ 17.) Inclusive of any FLSA

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

1  Settlement Share, the average settlement award is $1,350.17, with the highest settlement award

2  is $2,491.11 and the lowest award is $8.22. (*Id.* at ¶ 18.)

3       This Court preliminary approved the settlement, ruling that it was "satisfied at this stage

4  that continued litigation rather than settlement presented risks to Plaintiff and the putative class

5  members regarding any recovery." (Prelim. Approval Order at p. 21.) Nothing has substantially

6  changed since the Court's order granting preliminary approval, with the exception that the

7  Administration Costs, Class Counsel Fees Award and Class Counsel Costs Award are less than

8  previously estimated. Thus, the Settlement Class Members will receive more than estimated,

9  resulting in a benefit to the Settlement Class.

10            **4.      Experience and Views of Counsel**

11       Competent counsel is generally better positioned than the courts to create a settlement

12  that fairly reflects each party's expected outcome in litigation. (*In re Pac. Enters. Sec. Litig.*,

13  47 F.3d 373, 378 (9th Cir. 1995).)

14       Here, Class Counsel has substantial experience in litigating wage and hour class,

15  collective and representative actions. (Clark Decl., ¶ 58, Exh. 2; Haines Final Approval Decl. ¶

16  4.)  Collectively, Class Counsel has handled well over 100 class, collective and representative

17  actions where they have served as class counsel, lead counsel, and co-lead counsel in a

18  majority of the matters. (*Id.*) From their experience, Class Counsel contends that the settlement

19  in this Action is fair, adequate and reasonable. (Clark Decl. ¶ 59, ECF No. 37-3, Haines

20  Declaration ISO Preliminary Approval ["Haines Decl."] ¶ 6.) Given this Court's preliminary

21  determination that Class Counsel was adequate to represent the interest of the Settlement Class

22  and/or FLSA Collective, this Court should rely upon the experience of counsel. (*Nat'l Rural*

23  *Telecomms. Coop.*, 221 F.R.D. at 528.)

24            **5.      Presence of a Government Participant**

25       As required by the Class Action Fairness Act, counsel for Ricoh provided notice to the

26  United States Attorney General, William P. Barr and the California Attorney General, Xavier

27  Becerra on October 18, 2019. (EFC No. 39, Declaration of John. R. Giovannone re CAFA

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS**

Compliance.) Pursuant to the California Labor Code, Plaintiff provided notice of the settlement to the California Labor and Workforce Development Agency on September 20, 2019. (Clark Decl. ¶ 13, Exh. 1.) While there is no affirmative duty for a government entity to take action in response to a settlement, there is a presumption that once put on notice, the government entity will raise any concerns they may have during the normal course of the of the of the settlement procedures. (*Garner v. State Farm Mutl. Auto. Ins. Co.*, 2010 U.S. Dist. LEXIS 94977 *37 (N.D. Cal. Apr. 22, 2010).) To date, no government entity has raised any objection or concern regarding the settlement.

### 6. Favorable Reaction from Class Members

After receiving the Class List and conducting National Change of Address Search to update mailing addresses, the Claims Administrator mailed the Notice Packets to all 991 individuals on December 19, 2019. (Gomez Decl. ¶¶ 7-8.) The Claims Administrator also emailed the Notice Packets to 36 of the individuals who had an email address on file with Ricoh. (*Id.* at ¶ 9.) The Notice Packet included the information regarding: the nature of the litigation; a summary of the terms of the settlement; the definitions of the Settlement Class and the FLSA Collective; the amounts being sought for Administrative Costs, Service Award, Class Counsel Fees Award and Class Counsel Costs Award; the procedure and time period for requesting exclusion, objecting to the settlement or objecting to the motion for attorneys' fees and costs; the individuals' estimated Class Member Share and/or FLSA Settlement Share; and the date, time and location of the final approval hearing. (*Id.* at ¶¶ 7-8, Exhs. A, B.) The Claims Administrator also established a toll-free telephone number and a website for Class Members and/or Collective Eligible Members to obtain more information. (*Id.* at ¶¶ 5-6.)

To ensure that all Class Members and/or Collective-Eligible Members were informed of the settlement, the Claims Administrator performed a diligent search to locate the proper mailing address for any individual whose Notice Packet was returned. (*Id.* at ¶¶ 10-11.) Of the 991 Notice Packets distributed, only twelve (12) have been identified as undeliverable. (*Id.* at ¶ 11.)

14

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

1   Acceptance of the settlement is evidenced by the fact that the Claims Administrator did

2   not receive any objections or disputes of work weeks and only received one (1) request for

3   exclusion. (*Id.* at ¶¶ 13-14.) The lack of objections and minimal exclusions is a testament to the

4   fairness, reasonableness and adequacy of the settlement. (*See e.g. Nat'l Rural Telecomms.*

5   *Coop.*, 221 F.R.D. at 529 [affirming approval of settlement where 52,000 out of 376,310 class

6   members submitted claim forms and 54 objected to the settlement].)

7                    **7.      The Settlement Passes Scrutiny of Collusion**

8           Since this settlement was reached prior to class certification, the court must scrutinize

9   the settlement for evidence of collusion. (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d

10  at 946.)

11          As discussed at preliminary approval, Class Counsel did not engage in settlement

12  negotiations until they had possessed sufficient information to make an informed decision.

13  (Clark Decl. ¶¶ 52-53.) The settlement was negotiated with the assistance of well-respected

14  mediator, Lisa Klerman, Esq. (*Id.* at ¶ 11.) At all times, the negotiations were adversarial, non-

15  collusive and at arm's length. (*Id.*)

16          The Settlement Agreement provides that Class Counsel may seek an award of up to one-

17  third ($733,333.33) of the Gross Settlement Amount. (Agreement at ¶ 62(d).) The terms of the

18  Settlement Agreement create a Net Settlement Amount of approximately $1,281,666.67, which

19  is to be paid out to the Settlement Class. (Gomez Decl. at ¶ 17; Agreement at ¶ 62(a).) The

20  amount of attorneys' fees permitted by the Settlement Agreement is less than the estimated pay

21  out to the Settlement Class. As, discussed herein, Class Counsel is seeking a Class Counsel

22  Fees Award of $550,000 (25% of the Gross Settlement Amount), which is less than permitted

23  by the Settlement Agreement. Per the Settlement Agreement, the funds not awarded will be

24  included in the Net Settlement Amount for distribution to the members the Settlement Class.

25  (Agreement at ¶ 62(d).)

26          While the Settlement Agreement states that "Defendants have agreed that they will not

27  impose or impede Class Counsel's application for such awards," the statement is far from

28
**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS**

1  "clear sailing" as the attorneys' fees are not paid separate and apart from the Gross Settlement

2  Amount nor do the unawarded funds revert to Ricoh.

3      It is evident from the terms of the settlement agreement and the parties' engagement in

4  private mediation with a private mediator that the negotiations were adversarial, informed and

5  non-collusive. For the reasons stated herein, this Court should finally approve the settlement.

6  **V.      THE FLSA SETTLEMENT SHOULD BE FINALLY APPROVED**

7      When examining the settlement of a collective action under the FLSA, the court

8  assesses whether the settlement "is a fair and reasonable resolution of a bona fide dispute over

9  FLSA provisions." (*Camilo v. Ozuna*, 2019 U.S. Dist. LEXIS 83794 *30 (N.D. Cal. May 16,

10  2019) *citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).)

11  If the settlement is a reasonable compromise of issues in dispute, the court "may approve the

12  settlement in order to promote the policy of encouraging settlement of litigation." (*Id*.)

13      The FLSA Settlement Amount represents a great benefit to the members of the FLSA

14  Collective. The FLSA Settlement of $55,000 represents about 2.5% of the Gross Settlement

15  Amount. All Collective-Eligible Members will receive their FLSA Settlement Share and will

16  only release their FLSA claims if they cash the FLSA Settlement Share check. (Agreement at

17  ¶¶ 63(b) and (d).)

18      Due to the similarities between the class claims and the FLSA claims and the risks

19  associated with litigating complex actions, such as preserving manageability, the FLSA

20  Settlement is also fair, reasonable and adequate. This Court should confirm its previous ruling

21  that the FLSA Settlement is fair, reasonable and adequate.

22  **VI.     THE PAGA ALLOCATION SHOULD BE APPROVED**

23      The Settlement Agreement allocates $100,000 for civil penalties pursuant to the PAGA,

24  with $75,000 of the allocation to be paid to the LWDA and $25,000 allocated to the Net

25  Settlement Amount for distribution to the Settlement Class. (Agreement at ¶ 62(f).) While

26  Plaintiff's counsel estimated that Ricoh could be liable for up to about $8,263,950 in civil

27  penalties under the PAGA, the proposed allocation of $100,000 to the PAGA is an exceptional

28

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS**

outcome in light of all known facts and circumstances, as well as the fact that civil penalties under PAGA are discretionary. Courts have consistently ruled that no part of the settlement must necessarily be allocated and distributed to the LWDA. (*See e.g. Smith v. Am. Greetings Corp.*, 2016 U.S. Dist. LEXIS 66247 (N.D. Cal. May 19, 2016) [granting final approval of class action settlement allocating $37,500 of $4 million settlement to PAGA]; *Willner v. Manpower Inc.*, 2015 U.S. Dist. LEXIS 80697 (N.D. Cal. June 20, 2015) [granting final approval of a class settlement allocating $65,655 of $8.75 million settlement to PAGA]; *Chu v. Wells Fargo Investments, LLC*, 2011 U.S. Dist. LEXIS 15821 (N.D. Cal. Feb. 15, 2011) [approving $10,000 PAGA allocation in $6.9 million settlement].)

If a higher amount is allocated to the PAGA, the burden to pay civil penalties would be shifted to the members of the Settlement Class because the higher allocation would reduce the amount that the members of the Settlement Class would receive under the settlement. Although burden shifting may achieve the enforcement objective of the statute, it would do so at the expense of the employees that the statute was designed to protect. The proposed allocation of $100,000 to the PAGA, strikes a balance between the interest of all the parties, including the LWDA and general public, by penalizing the employer and providing relief to the Settlement Class Members. The Court should find that the PAGA allocation is fair, adequate, and reasonable.

## VII.    APPROVAL OF THE REQUESTED ADMINISTRATION COSTS, SERVICE AWARD, AND ATTORNEYS' FEES AND COSTS IS APPROPRIATE

### A.    <u>Administration Costs Are Reasonable</u>

Courts regularly award administrative costs associated with providing notice to the class. (*Acosta*, 2018 U.S. Dist. LEXIS 75998 at *44.) In this case, the Settlement Agreement calls for payment of Administration Costs not to exceed $35,000 from the Gross Settlement Amount. (Amended Agreement at § II, ¶ 1.) After receiving the class list from Ricoh, CPT did a National Change of Address search to update the mailing addresses provided. (Gomez Decl. ¶¶ 3-4.) CPT then mailed and emailed the appropriate Notice Packets to all 991 Class Members

1  and/or Collective Eligible Members. (*Id.* at ¶¶ 7-8.) CPT performed a skip trace to locate a

2  more suitable address for Notice Packets returned without a forwarding address and re-mailed

3  all Notice Packets accordingly. (*Id.* at ¶¶ 10-11.) CPT also created and maintained a case

4  specific toll-free telephone number and website that Class Members and/or Collective Eligible

5  Members could access to obtain information about the Action. (*Id.* at ¶¶ 5-6.) Pursuant to the

6  terms of the Settlement Agreement, CPT will also calculate and issue all settlement payments,

7  issue the appropriate tax forms and perform other necessary duties. Agreement at ¶¶ 62, 63, 65,

8  66.) CPT's charge for administering the settlement is $30,000. (Gomez at ¶ 19.) This amount is

9  lower than the estimate in the Settlement Agreement and is reasonable given the work

10  performed for the benefit of the Settlement Class/FLSA Collective. The Court should award

11  Administration Costs in the amount of $30,000 to the Claims Administrator.

### B.     Service Award to the Class Representative is Justified

13  Incentive awards are typical in class action cases as they are generally meant to

14  "compensate class representatives for work done on behalf of the class, to make up for

15  financial or reputational risk undertaking and bring the action, and sometime, to recognize their

16  willing to act as a private attorney general." (*Rodriguez v. West Publ'g Corp.*, 563 F.3d at 958-

17  959.) When determining whether an incentive award is reasonable courts generally consider:

> (1) the risk to the representative in commencing the suit, both
> financially and otherwise; (2) the notoriety and personal difficulties
> encountered by the representative; (3) the amount of time and effort
> spent by the representative; (4) the duration of the litigation; and (5)
> the personal benefit (or lack thereof) enjoyed by the representative
> as a result of the litigation.

22  (*Van Vranken v. Alt. Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995).) Where a plaintiff

23  undertakes a significant "reputational risk" such as by bring a wage and hour suit against a

24  former employers, an incentive award is appropriate. (*Rodriguez*, 563 F.3d at 958-959.)

25  Incentive awards typically range between $2,000 and $10,000, although a $5,000

26  incentive award is presumptively reasonable in this district. (*Acosta*, 2018 U.S. Dist. LEXIS

27  75998 at *46.)

28

18

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

Plaintiff is permitted to seek, and does so seek, a Service Award in the amount of $10,000, or any other amount this Court deems just and reasonable. (Agreement at ¶ 62(c).) As the class representative and the acting private attorney general, Plaintiff has performed his duties without exception. Plaintiff was an active participant throughout the litigation as he underwent an in-depth interview about his employment experience with Class Counsel, he searched for and provided all documents in his possession related to his employment with Ricoh, he responded to written discovery and spent numerous hours communicating with Class Counsel. (Declaration of Augusto De Leon ISO Final Approval ["De Leon Final Approval Decl."] ¶ 9; Clark Final Approval Decl. ¶ 27.) Plaintiff estimates that he has spent approximately 80 hours working on this case since its inception. (De Leon Final Approval Decl. ¶ 9.)

By bringing and maintaining this Action, Plaintiff took the risk of the possibility of an adverse judgment and a corresponding award of costs to Ricoh. (De Leon Final Approval Decl. at ¶ 10; Clark Final Approval Decl. ¶¶ 28-29) By being the named plaintiff in this Action, Plaintiff took the risk that future employers would be reluctant to hire him, particularly because he was in the process of looking for work around the time of the filing of the Action. (*Id*.)

Under the terms of the Settlement Agreement, Plaintiff has agreed to give up more than any other Class Member and/or Collective-Eligible Class Member as he has agreed to release any and all known and unknown claims against Ricoh and waive the rights afforded to him by California Civil Code section 1542 as consideration for the opportunity to apply for the Service Award. (Agreement at ¶¶ 62(c), 75(b); Clark Final Approval Decl. ¶ 30.)

Plaintiff went above and beyond what was required of him as a representative; it is undoubtable that without Plaintiff's active participation and commitment to the Action, there would be no Action and therefore no recovery for the members of the Settlement Class. (Clark Final Approval Decl. ¶ 29; Haines Final Approval Decl. ¶ 3; De Leon Final Approval Decl. ¶¶ 8-11.) Therefore, this Court should grant Plaintiff's request for a Service Award in the amount

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

of $10,000, or any other amount the Court deems just and reasonable, to Plaintiff for the time, expense and risk he undertook in prosecuting this Action and the conferred benefits.

### C.    The Class Counsel Fees Award is Fair and Reasonable

While Rule 23(h) permits an award of attorneys' fees and costs in a certified class action where it is "authorized by the law or by the parties' agreement," courts have an independent responsibility to ensure that the award is fair and reasonable. (Fed. R. Civ. P. 23(h); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941.)

When a settlement results in a common fund for the benefit of the class as a whole, courts have discretion to choose between the percentage method and the lodestar method in calculating fees. (*In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010).)  The court's discretion must be exercised reasonably to achieve a reasonable result. (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942.)

Class Counsel's request for a Class Counsel Fees Award in the amount of $550,000 is fair and reasonable. Class Counsel accepted this complex action on a pure contingency basis with no guarantee that they would recover any fees or costs associated with the prosecution of the action. (Clark Final Approval Decl. ¶ 17.) By taking on this Action, Class Counsel was precluded from taking other fee generating employment, particularly because the Action occupied a significant portion of Class Counsel's time and resources. (*Id.*)

From the start, this case involved complex legal and factual issues that presented a risk to Plaintiff and the putative class. (Suppl. Clark Decl. ¶¶ 10-14.) Nonetheless, Class Counsel's dedication to the Action resulted in a benefit to the members of the Settlement Class/FLSA Collective. Class Counsel was able to negotiate a non-reversionary settlement of $2,200,000 for the benefit of the Settlement Class/FLSA Collective. (Agreement at ¶¶ 42, 61.) It is estimated that the average settlement award, inclusive of any FLSA Settlement Share is $1,350.17. (Gomez Decl. ¶ 18.) Since Class Counsel is seeking less than anticipated in its Class Counsel Fees Award, the average settlement award will undoubtedly increase. Therefore,

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

the settlement is an excellent outcome for the members of the Settlement Class/FLSA Collective.

### 1. The Fees Sought Are a Reasonable Percentage of the Fund

The "common fund" doctrine provides that when "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." (*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).) The common fund approach permits the court to simply award attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee. (*Staton*, 372 F.3d at 968.)  The benchmark award for attorneys' fees in the Ninth Circuit is 25% of the common fund. (*Id*.)

The Settlement Agreement provides that Class Counsel may seek a Class Counsel Fees Award of up to $733,333.33 (or 33.33% of the Gross Settlement Amount). (Agreement ¶ 62(d).) Class Counsel, however, is seeking a Class Counsel Fees Award of $550,000 (or 25% of the Gross Settlement Amount). (Clark Final Approval Decl. ¶ 19.)  Since Class Counsel is seeking twenty-five percent (25%) of the Gross Settlement Amount, the benchmark for this district, the amount sought is presumably reasonable.

### 2. A Lodestar Cross-Check Supports the Reasonableness of the Fees Sought

The lodestar number is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate for the region and for the experience of the lawyer. (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 941.) The lodestar number is "presumably reasonable." (*Cunningham v. Cnty of L.A.*, 879 F.2d 481, 488 (9th Cir. 1988).) However, the court may adjust the lodestar amount upward or downward by an appropriate multiplier based on the "reasonableness" factors. (*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 942.) Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases. *Acosta*, 2018 U.S. Dist. LEXIS 75998 at *41.)

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL AND FOR ATTORNEYS' FEES AND COSTS

1    Class Counsel is requesting a Class Counsel Fees Award of $550,000. Class Counsel

2    has expended a total of 1,160.10 hours resulting in a lodestar number of $528,376. (Clark Final

3    Approval Decl. ¶¶ 21-22, Exh. 1.) The lodestar number is exclusive of the time preparing for

4    and attending the final approval hearing, monitoring the administration of the settlement, and

5    preparing for the final accounting hearing, among other things. (*Id*. at ¶ 22.) Class Counsel

6    expects to spend approximately 40 additional hours in this Action. (*Id*.) Class Counsel's

7    lodestar number, without consideration of the anticipated 40 hours, results in a multiplier of

8    0.96. If the estimated 40 hours are included, the lodestar number would certainly exceed the

9    requested $550,000.

10                    *i.        The Hourly Rates Requested are Reasonable*

11    When determining the reasonable hourly rate, the court should consider the rate

12    prevailing in the community for similar work performed by attorneys of comparable skill,

13    experience and reputation. (*Acosta*, 2018 U.S. Dist. LEXIS 75998 at *36.) For purposes of

14    determining the rate prevailing in the community, the court generally looks at the "forum in

15    which the district court sits." (*Id*.)

16    Class Counsel has submitted declarations, and relevant exhibits, evidencing their

17    experience and hourly rates. (*See* Clark Decl. ¶ 58, Exh. 2, Clark Final Approval Decl. ¶¶ 20-

18    21, Exh. 2; Haines Final Approval Decl. ¶¶ 4, 6-7.) The hourly rates of Class Counsel are fully

19    supported by their extensive experience and reputation in litigating wage and hour class,

20    collective, and representative actions in California, as well as other complex actions. (*Id*.)

21    Class Counsel's hourly rates commensurate with the prevailing market rates in the greater San

22    Diego and San Francisco areas for attorneys of comparable experience and skill. (Clark Final

23    Approval Decl. ¶ 20.) Class Counsel has also been approved at the hourly rates requested by

24    various state and federal courts. (*Id*.) The hourly rates requested are also comparable to the

25    Laffey Matrix. (*Id*.) Thus, the hourly rates requested are reasonable and should be approved.

26    / / /

27    / / /

28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

### ii.      The Number of Hours Claimed is Reasonable

Courts should approve only award fees based on "the number of hours reasonably expended on the litigation" and should exclude hours that are excessive, redundant, or otherwise unnecessary." (*Acosta*, 2018 U.S. Dist. LEXIS 75998 at *36.) The court is to use its discretion when making the determination of whether the reasonableness of the number of hours claimed. (*Id*.)

Class Counsel has expended a total of 1,160.10 hours resulting in a lodestar number of $528,376. (Clark Final Approval Decl. ¶¶ 21-22, Exh. 1.) The lodestar number is exclusive of the time preparing for and attending the final approval hearing, monitoring the administration of the settlement, and preparing for the final accounting hearing, among other things. (*Id*. at ¶ 21.) Class Counsel has submitted declarations and billing records evidencing the number of hours spent on this case over the past year and eight months. (Clark Final Approval Decl. ¶¶ 21-22, Exh. 1, Haines Final Approval Decl. ¶¶ 6-7.) The billing records include time spent on case research and investigation, drafting pleadings, drafting and responding to written discovery, meet and confer letters, attending court hearings, preparing for and attending mediation, and negotiating the settlement, among other things. (*Id*.) Each of these tasks were necessary to prosecute the Action and to obtain the recovery outlined in the Settlement Agreement for the benefit of the Settlement Class/FLSA Collective. (Clark Final Approval Decl. ¶ 21.) Therefore, the number of hours claimed is reasonable.

### D.      The Class Counsel Costs Award is Reasonable

It is well-established that an attorney who has created a common fund for the benefit of the class is to be reimbursed from the common fund for reasonable litigation expenses. (*Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014).) In wage and hour class actions, courts typically award litigation costs and expenses – including reasonable travel expenses. (*Acosta*, 2018 U.S. Dist. LEXIS 75998 at *42.)

The Settlement Agreement permits Class Counsel to pursue a Class Counsel Costs Award of up to $15,000. Class Counsel has incurred a total of $13,805.05 in unreimbursed

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL
AND FOR ATTORNEYS' FEES AND COSTS

expenses and costs related to the prosecution of this Action. (Clark Final Approval Decl. ¶¶ 24-25; Exh. 2; Haines Final Approval Decl. ¶ 9.) Each expense was reasonably and necessarily incurred as a result of Class Counsel's prosecutorial efforts. (Clark Final Approval Decl. ¶ 24, Exh. 2.) Each of the expenses incurred are of the type that would normally be billed to and paid for by the client, such as filing fees, legal research, attorney services, litigation support, mediation fees, travel, food and lodging, and other miscellaneous expenses. (*Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).) Class Counsel expects that it will expend another $500 in filing fees, courier fees, travel, lodging and food expenses in this Action. (Clark Final Approval Decl. ¶ 24, Exh. 2.) Class Counsel, therefore, seeks a Class Counsel Costs Award of $14,305.04 [$13,805.05 + $500]. Since the expenses and costs were incurred by Class Counsel for the benefit of the Settlement Class and/or FLSA Collective, the requested Class Counsel Costs Award is reasonable and should be approved.

## VIII.  CONCLUSION

For the reasons set forth herein, Plaintiff requests that this Court (1) finally approve the settlement in this Action; (2) finally certify the Settlement Class and the FLSA Collective, for settlement purposes only; (3) award Claims Administration costs in the amount of $30,000 to the Claims Administrator; (4) award a Service Award in the amount of $10,000, or any other amount the Court deems just and reasonable, to Plaintiff Augusto De Leon; (5) award a Class Counsel Fees Award in the amount of $550,000, or any other amount the Court deems just and reasonable, to Class Counsel; (6) award a Class Counsel Costs Award in the amount of $14,305.04 or any other amount the Court deems just and reasonable, to Class Counsel; (7) enter final judgment in this Action.

Dated: February 20, 2020

**CLARK LAW GROUP**

By: _____
R. Craig Clark
Monique R. Rodriguez
Alicja A. Urtnowski
*Attorneys for Plaintiff*

24